**In re Thomas R. JEWELL, Michelle F. Jewell, Debtors.**

**No. 06–53976.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 16, 2007.

Donald R. Jillisky, Marysville, OH, for Debtors.

### MEMORANDUM OPINION ON MOTION OF U.S. TRUSTEE TO DISMISS CHAPTER 7 CASE

C. KATHRYN PRESTON, United States Bankruptcy Judge.

This cause came on for hearing on January 16, 2007, upon the United States Trustee's (the "UST") Motion to Dismiss the above Chapter 7 case (Doc. 37). Present at the hearing were Pamela Rice representing the United States Trustee and Donald R. Jillisky representing Thomas R. Jewell and Michelle F. Jewell (collectively the "Debtors," or "Mr. Jewell" and "Mrs. Jewell", respectively). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

The UST moves to dismiss this case for abuse pursuant to § 707(b)(2)(A), asserting that the Debtors are claiming a household larger than that which they are entitled to claim, or in the alternative, that they did not properly calculate the current monthly income in that they did not include the income of the entire household, and that when properly calculated, a presumption of abuse arises. The UST further asserts that even if the presumption of abuse does not arise pursuant to § 707(b)(2)(A) or is overcome, dismissal is still appropriate under § 707(b)(3) when considering the totality of the Debtors' financial circumstances.

### I. *Statement of Facts.*

The Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on July 31, 2006. At the time of commencement of the case, the Debtors lived in Marysville, Ohio with their two depen-

dent children, an adult daughter Crystal with her three minor children, and an adult son Chris. Crystal and her children had moved in with the Debtors on January 4, 2006. Either unwilling or unable to sustain regular employment, Crystal contributed no funds to household expenses. Rather, the Debtors provided Crystal and her children food and shelter, and gave her funds for medical care, gas, and other needs. She and her children moved out in September 2006.

As of the date of commencement of this case, Chris had never left home, but was employed full-time while attending college. Chris neither contributed to the family household expenses, nor accepted financial assistance regularly from the Debtors. He also moved out in the Fall. The other dependent children are both employed, one of them just recently, but do not contribute any of their income to the household expenses. There is no present expectation that they will move out.

The Debtors filed a completed Official Form B22A Statement of Current Monthly Income and Means Test Calculation at the inception of the case. That initial Form reflected a household size of four, as did the amended Official Form B22A that the Debtors filed in August. Each of those documents reflected that the Debtors' current monthly income exceeded the median income for a family of four in Ohio, but after completion of the expense deductions on the Form, their monthly disposable income is less than $167 per month, and therefore, no presumption of abuse arose.[1] In September, the Debtors filed a second amended Official Form B22A ("Form 22"), to add Crystal and her children as mem-

bers of the household, and to recalculate the applicable median family income and disposable monthly income accordingly.[2] They did not include Chris as a member of the household. Form 22 reflects that the Debtors' current monthly income was $ 6934.91, or $ 83,218.92 when annualized. The Debtors claim a household of 8; therefore, according to their Form 22, they earn below the median income in Ohio.[3] As a result, they did not have to calculate the monthly disposable income on Form 22.

The UST has three complaints:[4]

1. That the Debtors are not entitled to claim Crystal and her children as members of the household;

2. That if the Court disallows the inclusion of Crystal and her children in the Debtors' household, then the Debtors' Amended Official Form B22A is the applicable Form and the Debtors are not entitled to the additional food and clothing expense claimed on line 39 of the Amended Official Form B22A.

3. That if the Debtors may claim Crystal and her children as members of the household, they must also claim their adult son Chris as a member of the household and include his income in the calculation of current monthly income and monthly disposable income.

Under the UST's recalculation of Form 22, the Debtors have more than $167.00 in monthly disposable income which, when multiplied by 60, exceeds $10,000, thereby triggering the presumption of abuse under § 707(b)(2)(A)(I). The UST further complains that even if the Court declines to endorse the UST's position regarding the

---

1. 11 U.S.C. § 707(b)(2)(A).

2. Form 22 also included in current monthly income Crystal's negligible income and food stamps of $881 received during the six months prior to commencement of the case.

3. Median income for a family of eight in Ohio is $ 90,326.00.

4. The UST disputed various line items in the Form 22, but at the hearing, chose to press only the three items discussed herein.

household size for purposes of Form 22, under the totality of the circumstances, the Debtors' financial picture presents one of abuse which warrants dismissal of this case pursuant to § 707(b)(3).

## II. *Discussion.*

### A. *Section 707(b)(2) Presumption of Abuse.*

Section 707(b) of the Bankruptcy Code provides in pertinent part as follows:

(b) (*l* ) After notice and a hearing, the court, on its own motion or on a motion by the United trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. . . .

(2)(A)(I) In considering under paragraph (*l* ) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent . . . In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

. . .

(6) Only the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b), if the current monthly income of the debtor, or in a joint case, the debtor and the debtor's spouse, as of the date of the order for relief, when multiplied by 12, is equal to or less than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

(7)(A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor, including a veteran (as that term is defined in section 101 of title 38), and the debtor's spouse combined, as of the date of the order for relief when multiplied by 12, is equal to or less than—

(i) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(iii) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

### (i) Debtors' Adult Daughter and Children

The key to resolution of this matter lies in the interpretation of the term "household." The UST points to the Internal Revenue Manual ("IRM") which states that the number of household members allowed for purposes of determining the applicable National Standards should generally be the same as those allowed as dependents on the taxpayer's tax returns.[5] Internal Revenue Manual, "Financial Analysis Handbook" § 5.15.1.7, *available at* http://www.irs.gov/irm/part5/ch15s01.html. The Debtors counter that, since median family income is defined by Bankruptcy Code § 101(39A) as "the median family income both calculated and reported by the Bureau of the Census,"[6] the Court should look to the Bureau of the Census definition of household: "all the people who occupy a housing unit."[7] Alternatively, Debtors suggest that the Court should use the ordinary meaning of the term "household" as defined by Black's Law Dictionary: "A family living together.... Those who dwell under the same roof and compose a family...." Both definitions are simply a "heads on beds" approach without regard to financial contribution of the household member, relationship to the debtor, or dependency.

The Bankruptcy Code does not define the terms "household," "family," or "dependents." Given the purpose of Official Form 22A, that being a "means test" or determination of disposable income, the Court is unwilling to accept the broad definitions of that term suggested by the Debtors of "heads on beds." Such a definition is inconsistent with the methodology and purpose of Official Form 22A for calculating a debtors' disposable income in that it does not include the element of a debtor's support of the person who puts the head on the bed. If a person lives in the home with the debtor but the debtor does not support that person, then inclusion of that person for purposes of calculating the applicable median family income and disposable income would give rise to a faulty calculation and would result in an inaccurate figure for both. Additionally, the purpose for which the Bureau of the Census determines a household is radically different (i.e., determining the number and demographics of those residing in particular areas of the United States) and bears no relationship to the purpose of the Official Form B22A.

---

**5.** The UST suggests that a debtor may increase the household size if 3 criteria are met: First, that the group of people has lived together for more than 1 year; second, that the group of people pooled their income; and third, that the group of people acted as an economic unit. For this proposition, the UST cites to the IRM; however, the Court was unable to locate language in the IRM to support this three-prong test.

**6.** 11 U.S.C. § 101(39A).

**7.** Although Debtors quoted a definition purportedly derived from the Bureau of the Census, they did not provide a citation for the definition, and the Court was unable to verify it.

The Court is also unwilling to accept the UST's narrow definition inasmuch as it fails to recognize those instances when a debtor may be actually providing support for a household member, but the circumstances do not fall neatly within the parameters envisioned by the UST (i.e., a group of people living together for a year and pooling income). While the IRM indeed states that, for IRS collection purposes, the number of household members allowed should generally be the same as those claimed as dependents on the taxpayer's tax returns, the IRS also recognizes that there may be reasonable exceptions. IRM at § 5.15.1.7.

The statute and the Official Form give guidance: "current monthly income" (hereinafter, "CMI") is defined in § 101(10A) of the Bankruptcy Code as the average monthly income received during the six months prior to commencement of the case. Consistent with the definition of CMI, Part II of the Official Form requires that "All figures must reflect average monthly income for the six calendar months prior to filing the bankruptcy case...." Part III of the Official Form then compares the debtor's annualized CMI (which is based on the preceding six months average income) to the median family income for the debtor's household size. Since the calculations of the Official Form focus on the six month period prior to the case, it begs the question why Congress would contemplate a household size based on a differing time period? If the debtor has been the source of support for a household member for the greater part of the preceding six months, why would a family size other than that supported by the debtor be used for the CMI and disposable income calculations? As aptly pointed out by the Debtors, the purpose of the Internal Revenue Code is to create income for the government; the purpose of the Financial Analysis Handbook of the IRM is to assist the government in collection of sums due it from taxpayers. The policy of the Bankruptcy Code is to provide the honest but unfortunate debtor with a fresh start. Section 707(b) does not direct the Court, expressly or implicitly, to disregard the policy undergirding the Bankruptcy Code during its analysis of the Debtors' disposable monthly income. In light of this, resort to any guidelines in the IRM is not determinative of household size for purposes of Official Form B22A.

 In the instant case, due to the timing of Crystal's residence with the Debtors, as of the date of filing of the case, the Debtors evidently had not filed an income tax return (since she moved in) on which they could have claimed Crystal and her family as dependents. However, there is no doubt that Crystal was dependent on the Debtors for the support of herself and her children during the entire six months prior to this case, and should be considered part of the household. She received a monthly average of only $881 in wages and food stamps during the six months prior to commencement of the case. The Debtors supported them, providing a home, food and other necessities for Crystal's family, as well as providing funds to Crystal for gas and medical expenses. While Crystal did not contribute any of her meager income to pay the Debtors' household expenses or reimburse the Debtors for her own housing, food and support expenses, there is no evidence that she did not share the benefits of the food stamps, that the Debtors were subsidized from any other source for Crystal's share of household expenses, or that Crystal obtained food, shelter or support from any other source. It appears that she was unable to contribute to the household any income she earned after paying her other expenses, such as child care and transportation. Furthermore, there is no evidence that the Debtors or Crystal intended the

living arrangement to be only temporary, or that the group did not function as an economic unit. While the Court would have welcomed more specific evidence as to Debtors' expenditures to support Crystal's family, the burden of proof is on the UST, and the UST failed to show that the Debtors are not entitled to include Crystal's family as members of the household.

Therefore, the Court finds that the Debtors may claim a household of eight, encompassing Crystal and her three children. Inasmuch as the Court has found that the Debtors were maintaining a household of 8, the Debtors' Form 22 appears to be properly completed, rendering moot the UST's issue pertaining to the additional food and clothing expense claimed on line 39 of the Debtors' Amended Official Form B22A.

### (ii) Debtors' Adult Son

■ On the other hand, the evidence (or lack thereof) appears to show that Chris was merely a head on a bed. Although the Debtors provided him funds on occasion (as Mrs. Jewell testified, "little bits here and there"), he did not ask for and did not receive financial assistance from them regularly. There is no evidence in the record that they provided him support in the form of meals, clothing, and the like, or that he was claimed as a dependent on their recent tax returns. Although he had never left home, he was employed full time and paid most of his own expenses. Again, the burden of proof is on the UST to show that the size of the household claimed by the Debtors on Form 22 was improper, and the UST failed to carry that burden.

■ Even if this Court agreed with the UST that Chris should be included as a member of the Debtors' household for purposes of calculation of Form 22, the Debtors would not be required to include his income in the Form's calculations. Section 101(10A) specifically includes only the in-come of the Debtors in calculation of CMI, not household income: "The term 'current monthly income'—(A) means the average monthly income from all sources **that the debtor receives** (or in a joint case, the debtor and the debtor's spouse receive) . . .; and (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents. . . ." 11 U.S.C. § 101(10A)(emphasis added). Similarly, § 707(b)(6) and (7) focus on the debtor's income, or in joint cases, the income of the debtor and debtor's spouse. A debtor's income may include rent paid by other members of the household or contributions to the household expenses, but nowhere in the statute or Official Form B22A is it suggested that the debtor's income includes the income of other members of the household not used on a regular basis for household expenses. Chris did not contribute funds to the household. Clearly, Chris' income would not be included in the Debtors' CMI.

### B. *Section 707(b)(3) Totality of the Circumstances.*

The UST asserts that even in the absence of a presumption of abuse under § 707(b)(2), the Court should dismiss this case given the totality of the Debtors' circumstances.

Section 707(b)(3) of the Bankruptcy Code provides in pertinent part as follows:

(3) In considering under paragraph (*l*) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.

The UST's argument is first premised on the theory that the Debtors may claim a household of only four, and the UST points to the resulting recalculation of the means test as if the first prong of his Motion to Dismiss were successful; that recalculation of Debtors' disposable monthly income rests largely on the exclusion of certain line items input by the Debtors on their Amended Official Form B22A and demonstrates that the Debtors have the ability to repay a substantial portion of their debt. The UST further bases his Motion on the supposition that the Debtors' household size may be reduced to two sometime in the future. The UST has not suggested that there is bad faith illustrated in this case warranting dismissal under § 707(b)(3)(A), or raised an objection to any particular expenses itemized on the Debtors' Schedule J.

■ As a threshold matter, Debtors suggest that the "means test" forecloses any consideration of Debtors' ability to pay in an analysis of the totality of the circumstances, in light of Congress' formulation of a bright line test under § 707(b)(2) for ability to pay. However, § 707(b)(2) creates only a presumption of abuse, not the exclusive application of a financial test for dismissal. In fact, following the Debtors' reasoning, may render the language of § 707(b)(3)(B) ("the court shall consider— ... (B) [whether] the totality of the circumstances ... of the debtor's financial situation demonstrates abuse") surplusage, something the Court is bound to avoid. Additionally, this concept is belied by the very same considerations that force this

Court to look to a debtor's Schedules I and J when assessing a motion to dismiss under § 707(b)(3).

■■ In analysis of totality of the circumstances, the Court is not constrained by the IRS Standards or by the Official Form B22A, but rather by the Debtors' actual financial situation.[8] This is because the Official Form B22A is a historical review and contains information which may bear little resemblance to the debtor's actual current circumstances,[9] whereas the Schedule J should reflect the actual budget by which the debtor lives. Furthermore, where, as the instant case, a debtor is not required to complete the expense calculations on Official Form B22A because the debtor's income falls below the median family income, the Court has no alternative but to resort initially to Schedules I and J to ascertain the debtor's financial circumstances.

The Debtors admitted that their household size has decreased to four, with the departure of Crystal's family and Chris several months after commencement of this bankruptcy proceeding. Contrary to the UST's supposition, Mrs. Jewell testified that they have no present expectation that the last two children will be moving out of the household imminently. The UST presented no evidence pertaining to the Debtors' current living expenses to impeach their statements given on Schedule J, nor did the UST offer any argument or theory why the Court should not accept the Debtors' Schedule J as indicative of Debtors' financial situation. In fact, the parties stipulated to admission of the bankruptcy pleadings into the record as

8. This is not to say that a debtor may engage in a lavish lifestyle and elude the eye of the UST and the Court upon filing of a chapter 7 case. Absent extraordinary circumstances, a debtor who contemplates retaining the mcmansion and expensive late model vehicles may well invite dismissal under the totality of the circumstances.

9. *See e.g., In re Fuller,* 346 B.R. 472 (Bankr. S.D.Ill.2006).

exhibits and stipulated to the veracity of the documents. Schedule I indicates that the Debtors' present monthly income net of payroll deductions is $3005.00 in the aggregate; Schedule J reflects monthly expenses of $3614.00, for a monthly net loss of $609.00.

The UST having offered nothing further for the Court's consideration in connection with the totality of the circumstances, the Court finds that the Debtors' financial situation does not illustrate abuse warranting dismissal under § 707(b)(3)(B).

### III. *Conclusion.*

In light of the foregoing, the UST's Motion to Dismiss will be DENIED. A separate order will be entered consistent with this Memorandum.

**IT IS SO ORDERED.**