In re Kimberly M. **ELLRINGER,** Debtor.

No. 06–42263.

United States Bankruptcy Court, D. Minnesota.

June 20, 2007.

Barbara J. May, Barbara J. May, Attorney at Law, Roseville, MN, for Debtor.

*ORDER DENYING MOTION
TO DISMISS*

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the United States Trustee's motion to dismiss the debtor's chapter 7 case pursuant to 11 U.S.C. §§ 707(a), 707(b)(2), or 707(b)(3).

An evidentiary hearing was held on April 27, 2007. Michael R. Fadlovich appeared on behalf of the U.S. Trustee and Barbara J. May appeared on behalf of the debtor. Based on the evidence, I deny the United States Trustee's motion.

## FACTS

At the time of her bankruptcy filing, the debtor shared a home with Pamela Ellringer. The Ellringers owned their home as joint tenants and were jointly liable for the mortgage. They also had a joint bank account and jointly owned a 2002 Ford Focus. The debtor testified that only Pamela was liable for the loan which encumbered the Focus, although the parties stipulated that both the debtor and Pamela were liable for the loan. The debtor individually owns a 1988 Chevrolet Celebrity and a 2006 Saturn Ion. The Ion is subject to a lien. She also owned investment property, which was in foreclosure. The foreclosure sale occurred after she filed her petition

Prior to her bankruptcy filing, Pamela contributed $600 a month towards shared household expenses. This amount was used to pay the loan on the Focus and some of the additional living expenses the debtor incurred on behalf of Pamela. Except for the $600, the debtor paid for all of the mortgage, utilities, groceries, and other household necessities.

The debtor filed her petition on October 9, 2006. She had unsecured debts of approximately $11,000. Her original B22A form indicated that, at $44,276, her yearly income was above the applicable median income for a household of one in Minnesota, which is $42,028. The debtor did not include the $600 that Pamela gave her each month on line 8, which includes "any amounts paid by another person or entity on a regular basis, for the household expenses of the debtor or the debtor's depen-

dents." In addition, the form included vehicle operating and ownership expenses for two cars. Using these figures, the debtor's disposable income each month was—$200.

On December 14, the U.S. Trustee filed a motion to dismiss this case for abuse. As part of the motion, the U.S. Trustee prepared an alternative B22A form with several changes. First, he included Pamela's $600 payment on line 8. Second, because the debtor's monthly income was higher by virtue of the $600, the U.S. Trustee increased the deduction for food, clothing, household supplies, personal care and miscellaneous expenses. Third, the U.S. Trustee allowed operating expenses for one vehicle, although he allowed ownership expenses for two vehicles. Finally, the U.S. Trustee deducted the monthly cost of administering a chapter 13 repayment plan. Using these figures, the debtor had nearly $400 of disposable income each month which over 60 months would result in $23,066 of disposable income. Thus, the U.S. Trustee sought dismissal of the debtor's chapter 7 case because it did not pass the means test.

In response to the trustee's motion, the debtor prepared a new means test form on March 23, 2007 which excluded the $600 payment Pamela made each month, gave a lower amount for national standards for food, clothing, household supplies, personal care and miscellaneous expenses, and included ownership and operating expenses for two vehicles. Also, the debtor deducted an extra $200 for additional food and clothing expenses, although the debtor provided no documentation that the amount was reasonable and necessary. The debtor also included as secured debt repayment both the mortgage on her home and the mortgage on her investment property, although the debtor had no intention of retaining the investment property and had not made the mortgage payments for some time. She also included a monthly payment in order to cure the deficiency on the investment property's mortgage. Using this means test form, the debtor had—$1,741 of disposable income available each month.

Approximately two weeks before the evidentiary hearing held on April 27, 2007, Pamela moved out of the house which she shared with the debtor. Pamela ceased making $600 monthly payments to the debtor, and the debtor closed their joint bank account.

To demonstrate that the debtor's chapter 7 case violated the means test even after Pamela moved out, the Trustee prepared a second B22A form. In it, the U.S. Trustee excluded the $600 contribution that Pamela made to the debtor. The U.S. Trustee also used a lower amount for food, clothing, household supplies, personal care and miscellaneous expenses. He used ownership and operating expenses for one vehicle and eliminated the additional food and clothing expense. In addition, he did not allow the debtor to deduct the secured payments on the investment property or to cure the deficiency on the property. The U.S. Trustee also deducted the monthly expense necessary to administer a Chapter 13 plan. Using the U.S. Trustee's calculations, the debtor had $200 of disposable income available each month, which equals $12,000 over sixty months. The following table summarizes the differences among the four B22A forms.

**Table**

| Category | Debtor's B22A form— Oct. 9, 2006 | U.S. Trustee's first B22A form | Debtor's B22A form—March 23, 2007 | U.S. Trustee's second B22A form |
|---|---|---|---|---|
| Line 8—Regular contributions to the household expenses of the debtor | $0 | $600 | $0 | $0 |
| Line 13—Annualized Current Monthly Income | $44,276.04 | $51,476.04 | $44,276.04 | $44,276.04 |
| Line 19—National standards for food clothing, household supplies, personal care, and miscellaneous | $621 | $703 | $621 | $621 |
| Line 22—Vehicle operation expense | $416 | $333 | $416 | $333 |
| Line 23 & 24—Vehicle ownership expenses | $157.89 | $157.89 | $157.89 | $157.89 |
| | $332 | $81.24 | $332 | $0 |
| Line 39—Additional Food and Clothing Expenses | $0 | $0 | $200 | $0 |
| Line 42—Deductions for Debt Payment | $1,398.59 | $1,637.18 | $2,648.59 | $1,398.59 |
| Line 45—Administrative Expenses | $0 | $28.94 | $0 | $15.06 |
| Line 50—Monthly Disposable Income | $(199.79) | $384.44 | $(1,741.46) | $200.15 |
| Line 51—60 Month Disposable Income | $(11,987.40) | $23,066.40 | $(104,487.60) | $12,009.00 |

## DISCUSSION

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) & (b); 28 U.S.C. §§ 157(a) & (b)(1); 28 U.S.C. § 151 and Local Rule 1070–1. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (B).

### *The Plain Language of the Statute Determines Its Interpretation.*

■ When interpreting a statute, the place to start is its plain meaning. The Supreme Court has stated "time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). When the statute's language is plain, the sole function of the court—at least where the disposition required by the texts is not absurd—is to enforce it according to its terms. *Hart-ford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000). "The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158, 112 S.Ct. 527, 532, 116 L.Ed.2d 514 (1991).

■ To determine the correct application of the means test, I look to the plain meaning of the statute describing the means test found in 11 U.S.C. § 707. Only if the result reached by the application the statute is absurd may I depart from its plain meaning. Absurdity is more than a result which does not reflect the reality of the debtor's situation. The means test will nearly always calculate a different disposable income than the debtor's actual income because it uses predetermined expenses

based on the debtor's income and household size and not the debtor's actual expenses. It also uses historical income rather than current income. Although the means test may lead to an unfair result in an individual's case, when Congress passed the BAPCPA amendments, it was less concerned with fairness in any particular debtor's case than it was concerned with creating fairness and uniformity throughout the bankruptcy system as a whole. *See* 151 Cong. Rec. S2470 (daily ed. Mar. 10, 2005) (statement of Sen. Nelson) ("First and foremost, the bill will curb abuse of the bankruptcy system by implementing a means test to ensure that those who can afford to repay some portion of their unsecured debts are required to do so."). Thus, the means test limits judicial discretion to look at the actual circumstances of the debtor and substitutes a formula that allows only certain, predetermined expenses. It is not my role to question (or attempt to change) the outcome which the statute requires.

Although the parties argue a number of issues regarding the means test, I address only two, either of which independently results in a decision in the defendant's favor.

### The Date the Debtor Filed the Petition Determines the Debtor's Income, Expenses, and Household Size.

▮ 11 U.S.C. § 101(10A) indicates that "current monthly income" is determined by averaging the monthly income the debtor received over the previous six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case. In addition, the standard expenses that the debtor may deduct for purposes of the means test are those that are in effect on the date of the order for relief. *See* 11 U.S.C. § 707(b)(2)(A)(ii). The debtor's monthly payments for secured debts are calculated

as the sum of the total amounts contractually due in each month of the 60 months following the date of the petition divided by 60. 11 U.S.C. § 707(b)(2)(A)(iii).

▮ The means test provides a snapshot of debtors' finances. The means test is not meant to be continually updated as debtors' circumstances change. Thus, although Pamela moved out after she filed her petition, the debtor's income and expenses remained unchanged from the day she filed for purposes of the means test. Likewise household size should also be determined on the same day that the other elements of the means test are fixed.

### The Debtor Resided in a Household of Two.

▮ Under § 707(b)(6):

Only the judge or the United States trustee ... may file a motion under section 707(b) if the current monthly income of the debtor ... as of the date of the order for relief, when multiplied by 12 is equal to or less than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner.

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals.

The Bankruptcy Code does not define what constitutes a household. 11 U.S.C. § 101(39A)(A) defines the "median family income" as "the median family income both calculated and reported by the Bureau of the Census." This calculation uses the Census Bureau's definition of household. Thus, the Census Bureau provides the most appropriate definition of "household" for use in the means test because it ensures that a household in the means test

will have the same number of members as the calculation of median family income. The Census Bureau defines "household" as "all of the people, related and unrelated, who occupy a housing unit." U.S. CENSUS BUREAU, CURRENT POPULATION SURVEY (2004), http://www.census.gov/population/www/cps/cpsdef.html. A housing unit is a house, apartment, group of rooms or single room that is intended for occupancy as a separate living quarters. *Id.* Households may be either family or nonfamily. *Id.* Family households include the householder and all the other people in the living quarters who are related to the householder by birth, marriage, or adoption. *Id.* A non-family household consists of a householder living alone, or a householder who shares the home exclusively with people to whom he or she is not related. *Id.* If Congress had intended to limit household size to only household members related by blood, marriage or adoption, it could have done so by saying "in the case of a debtor in a *family* of 2 . . . ." However, in recognizing that there may be reasons why two unrelated, non-dependent individuals should be treated as a household for purposes of the means test, Congress elected to use the word "household" instead of the word "family."

The U.S. Trustee advocates using the Internal Revenue Manuel's definition of "household." The IRM does not define household, but indicates that the number of persons allowed under the national standard expenses should generally be the same as the number of dependents on the taxpayer's latest income tax return. INTERNAL REVENUE SERVICE, INTERNAL REVENUE MANUAL, § 5.15.1.7 (2004), *available at* http://www.irs.gov/irm/part5/ch15s01.html# d0e182366. I decline to use the IRM definition because it applies to the allowed expenses after the debtor is already found to have above median income. The IRM definition is not used to decide the thresh-old question of whether a debtor has above median income for her household size.

*The Debtor Must Include Part of Pamela's Monthly Contribution in Her Calculation of Current Monthly Income.*

■ According to 11 U.S.C. § 101(10A) the term "current monthly income":

> (A) means the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6–month period ending on—
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii);
>
> (B) includes any amount paid by an entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents.

To the extent that Pamela's contributions were used to support the debtor or the debtor's dependents, the debtor must include them in her current monthly income. The remainder of the contributions are excluded because Pamela is not a dependent of the debtor and the statute does not require the inclusion of income from a third-party that is used to support a non-dependent. The U.S. Trustee argues that if the debtor's household includes Pamela, then Pamela's entire income must be included in the debtor's calculation of current monthly income. However, the statute only requires that the debtor include income provided by a person other than the debtor for support of the *debtor or the debtor's dependents*. Besides the sources of income included in the definition of "current monthly income," only the income of a debtor's spouse is included as part of the means test calculation. *See* 11 U.S.C.

§ 707(b)(7)(A). As the debtor is not married to Pamela, she need not include any income that Pamela earns which Pamela uses to support herself.[1]

### The Debtor's Income is Below the Median for a Household of Two.

■ $260 of Pamela's $600 monthly contribution is counted towards the debtor's current monthly income because she used it to pay the loan on the Focus, which was a household expense of the debtor. However, the debtor used the remainder of the $600 to pay Pamela's share of the household expenses, and it is therefore excluded from the debtor's calculation of current monthly income. The applicable median income for a household of two in Minnesota is $55,338. If $260 a month is added to the debtor's income, the debtor has a annual income of $47,396.04. Even if the entire $600 were added to the debtor's income, the debtor would only have an annual income of $51,476.04. Because the debtor's income is below the median income for a family of two in Minnesota, the U.S. Trustee is barred by § 707(b)(6) from bringing this motion.

### Even If the Debtor's Income Were Above the Median, the Presumption of Abuse Would Not Arise Because She Had Less Than $100 Per Month of Disposable Income.

11 U.S.C. § 707 provides that:

(2) (A)(i) The court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

(ii) (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . . In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

Even if the debtor had above median income for her household size and the U.S. Trustee could therefore make a motion to dismiss the debtor's chapter 7 case, the U.S. Trustee would still need to prove that the debtor's disposable income was high enough that her case would be presumed abusive. Because the debtor's total unsecured debts were less than $12,000, 25 percent of which is $3000, the U.S. Trustee need only show that the debtor's disposable income is equal to or greater than $6000 over 60 months in order for the presumption of abuse to arise. In other words, the U.S. Trustee must show that the debtor's allowed expenses under the

---

1. Even if I were required to include Pamela's entire income in the means test, I would be unable to do so because the U.S. Trustee has not provided evidence of Pamela's income other than the $600 she contributes to the debtor's support.

means test do not reduce her disposable income below $100 per month.

### The Debtor May Deduct Mortgage Payments Secured by Her Investment Property.

■ 11 U.S.C. § 707(2)(A)(iii) allows the debtor to deduct monthly payments on secured debts which are calculated as the sum of:

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

■ The debtor has deducted the scheduled payments on her investment property and a monthly amount necessary to cure the default that existed at the time of filing. The U.S. Trustee argues the debtor cannot deduct payments on her investment property because Congress's intent when enacting the BAPCPA amendments was to require those who can afford to repay some of their unsecured debts to do so. However, this broad statement of intention does not require that every provision of BAPCPA be interpreted, or in this case ignored, to the detriment of the debtor. Unless the plain meaning of the statute results in absurdity, the plain meaning must be followed, even if its meaning leads to a result that was arguably unforseen by Congress. Like the earlier discussion, if Congress intended the result promoted by the U.S. Trustee, it would have been easy enough to limit these deductions to those cases where the debtor intended to retain the property. It

is not absurd to allow the debtor to deduct secured loan payments as part of the means test without regard as to whether the debtor intends to retain the property. Nor does the fact that the provision favors the debtor contravene Congress's intention to create fairness throughout the bankruptcy system as a whole. That the outcome of the formula sometimes favors the debtor is not an indictment of the formula. Rather, it is the foreseeable outcome of applying a self-enforcing statutory mechanism to all debtors.

Another bankruptcy judge in this district has ruled that a debtor may deduct payments secured by her home even if she intends to abandon it. *See In re Hartwick,* 352 B.R. 867, 869 (Bankr.D.Minn. 2006). I agree with the decision in *Hartwick* that the plain language of the statute permits the debtor to deduct payments on secured property even if the debtor has no intention of retaining the property. The means test allows the debtor to deduct "all amounts scheduled as contractually due . . . in each month of the 60 months following the date of the petition." That the debtor has no intention to pay the debts at the time she filed does not change the fact that the debtor was contractually obligated to make payments on her mortgage at the time of filing. Contrary to what the U.S. Trustee suggests, there is no statutory requirement that the debtor intend to keep the secured property post-petition. Thus, the debtor may deduct, for purposes of the means test, payments on her investment property. If the debtor deducts the payments on her investment property from her income, then the debtor's disposable income would be negative even assuming that the remainder of the U.S. Trustee's calculations are accurate. Therefore, the debtor's case would not be presumed abusive even if the debtor had above median income.

*The Debtor's Case Is Not Abusive for Bad Faith or Under the Totality of the Circumstances.*

 If the presumption of abuse does not arise in this case or is rebutted, I may still find the debtor's case abusive for bad faith or under the totality of the circumstances. 11 U.S.C. § 707(b)(3) provides that:

In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider—

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances(including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

The U.S. Trustee presented no evidence that the debtor filed her case in bad faith or that the totality of her circumstances indicates abuse. The debtor is of relatively limited means and she does not expect her income to increase in the foreseeable future. The debtor's living expenses are reasonable, and her living expenses consume a nearly all of her income. With the loss of Pamela's $600 monthly contribution, the debtor's finances will be even more stretched than at the time she filed the petition. Furthermore, the U.S. Trustee did not present evidence of the debtor's actual income and expenses from which I could determine whether the debtor has actual disposable income using her actual expenses and not the artificial expenses the means test requires. Thus, I find that the debtor did not file her case in bad faith and that the totality of the circumstances does not indicate abuse.

## ORDER

THEREFORE, IT IS ORDERED:

The U.S. Trustee's motion to dismiss this case is denied.