**Jason Willis EPPERSON, Debtor.**

**No. 2–09–bk–01534–CGC.**

United States Bankruptcy Court, D. Arizona.

July 23, 2009.

Asheton B. Call, Asheton B. Call, P.C., Chandler, AZ, for Debtor.

Christopher J. Pattock, Office of the U.S. Trustee, Phoenix, AZ, U.S. Trustee.

**UNDER ADVISEMENT DECISION RE: DEBTOR'S HOUSEHOLD SIZE AND CURRENT MONTHLY IN-COME**

CHARLES G. CASE II, Bankruptcy Judge.

## I.  Introduction

The Debtor and his roommate ("Roommate") are a cohabitating couple that have lived together for several years. The Debtor alleges that he and his Roommate maintain separate finances and, until recently, his Roommate gave him $900 per month for household expenses. However, the Debtor alleges that his Roommate is currently looking to purchase his own house and has reduced the monthly contributions to $250.

On Form B22A, "Chapter 7 Statement of Current Monthly Income and Means–Test Calculation" ("Means Test"), the Debtor claimed a household of two, counting himself and his Roommate, and included only $900 of his Roommate's contributions to the household in his current monthly income. The United States Trustee ("UST") argues that the Debtor is receiving an unfair advantage by claiming a household size of two and not including the second household member's income in current monthly income. The UST argues that the Debtor must either include all of the Roommate's income in current monthly income or reduce the household size to one.

The issues for the Court are: (1) whether the Debtor may claim a household size of two on his Means Test and (2) how much of the Roommate's income the Debtor must claim in current monthly income.

## II.  Facts and Background

On January 29, 2009, the Debtor filed this Chapter 7 case listing non-priority

unsecured debts totaling $55,449.29. On January 30, 2009, the Debtor filed his original means test counting himself and his Roommate in household size. In current monthly income the Debtor claimed $4,907 of his income and $900 in monthly contributions from his Roommate for household expenses.

The Debtor filed an amended Means Test on May 26, 2009 claiming $5,957 of current monthly income, again including his Roommate's $900 monthly contribution, and $5,942.89 of deductions based upon a household size of two.[1] According to the Debtor's calculation his 60–month disposable income is $846.60 and the presumption of abuse under 11 U.S.C. § 707(b)(2)[2] does not arise. The Debtor alleges that his Roommate recently reduced the $900 contribution to $250 and on May 26, 2009 the Debtor amended his Schedule I reflecting this decrease.

The Debtor alleges that he and his Roommate maintain separate finances, have no access to each other's income, and own no common property. The Debtor also claims that neither is responsible for the debts of the other. The UST alleges that at some point the Roommate was listed on the Debtor's health insurance policy, but finds this to be the only noteworthy financial connection between the two.

The UST filed a motion to dismiss arguing that the Debtor's current monthly income is understated because it does not include the Roommate's entire income. The UST further argues that if the Debtor does not include the Roommate's entire income in current monthly income, the household size should be reduced to one and expenses adjusted downward accordingly.

### III.  Position of the Parties

The Debtor relies on the "heads on beds" approach to household size and asserts that because his Roommate lives in the same house with him he is entitled to a household size of two. *See In re Ellringer*, 370 B.R. 905, 910–12 (Bankr.D.Minn. 2007). The Debtor argues he does not need to include his Roommate's income in current monthly income because he and his Roommate maintain separate finances. While the Debtor includes the $900 contribution from his Roommate in current monthly income, he claims that this is not required according to the definition of "current monthly income" in § 101(10A).[3] He argues that because the contributions are for the Roommate's share of the

---

1.  The Debtor declined to include his Roommate's entire income in current monthly income as the UST suggested. The Debtor did add $289 to transportation expenses, remove an expense for home energy costs, and adjust an overstated vehicle payment to the UST's figure of $537. These adjustments resolved the objections of the UST to expenses claimed, leaving only the issues of household size and Roommate's contribution.

2.  Section 707(b)(2) reads:

     (A)(I) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii),

and (iv), and multiplied by 60 is not -less than the lesser of—

     (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
     (II) $10,950[.]

3.  According to 11 U.S.C. § 101(10A), "current monthly income":

     (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—
     (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files

household expenses and not "for the household expenses of the debtor," the $900 technically does not need to be included in current monthly income. § 101(10A)(B).

The UST's motion to dismiss asserts that current monthly income is understated because the Debtor must include all of the second household member's income; otherwise the Debtor is "having his cake and eating it too" by increasing expenses for a second household member with no corresponding increase in income. To remedy this asymmetry, the UST suggests that the Debtor claim a household size of one and reduce his expenses accordingly or claim a household size of two and include the Roommate's entire income. The UST relies on *In re Jewell*, 365 B.R. 796, 799–802 (Bankr.S.D.Ohio 2007) and *In re Law*, No. 07–40863, 2008 WL 1867971, at *2–8 (Bankr.D.Kan. April 24, 2008), each of which focuses on the Debtor's support of household members

and dependency to determine household size. Consequently, the UST argues that because the Debtor does not support the Roommate the Debtor may not include his roommate in household size. According to the UST's calculations, under either scenario the presumption of abuse under § 707(b)(2) arises and the case should be dismissed.

Further, the UST argues that even if the presumption in § 707(b)(2) does not arise the Debtor's financial situation under § 707(b)(3)[4] demonstrates abuse. The UST's argument under § 707(b)(3) also depends on his contention that the Debtor's income is substantially understated because he fails to include the Roommate's entire income on Schedule I.

## IV.  11 U.S.C. § 707(b)(2)

### A.  Household Size

■ The Code does not define the term "household" and there is no Ninth

the schedule of current income required by section 521(a)(1)(B)(ii); or
  (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
  (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.  (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case

the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

4.  Section 707(b)(3) reads:
  (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the
    provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Circuit authority with factual circumstances directly analogous to this case. In *Ellringer,* the court used the United States Census Bureau definition of "household" because on Form B22A "household size" is used to calculate "median family income." 370 B.R. at 910–11. In turn, "median family income" is defined as the "the median family income both calculated and reported by the Bureau of the Census." *Id.* at 910 (citing § 101(39A)(A)). The Census Bureau defines a "household" as "all of the people, related and unrelated who occupy a housing unit." *Id.* at 911 (citing U.S. Census Bureau, Current Population Survey (2004), available at http://www.census.gov/population/www/cps/cpsdef.html). Under the Census Bureau's definition, the debtor in *Ellringer* was allowed claim a household size of two for herself and her nondependent roommate. *Id.*

On the other hand, *Jewell* relies on whether the debtor financially supports an alleged household member. 365 B.R. at 800–01. The *Jewell* court found the "heads on beds" approach too broad because "[s]uch a definition is inconsistent with the methodology and purpose of Official Form [B]22A for calculating a debtors' disposable income in that it does not include the element of a debtor's support of the person who puts the head on the bed." *Id.* at 800. The Debtors were entitled to claim a household size of eight, including their financially dependent adult daughter and her three children. *Id.* at 802.

Although the *Jewell* court has a valid concern about the inconsistency of the "heads on beds" approach, Congress does not require courts to "take into account 'financial contribution of the household member, relationship to the debtor, [and] dependency' " when determining household size. *In re Smith,* 396 B.R. 214, 218 (Bankr.W.D.Mich.2008) (citing *Jewell,* 365

B.R. at 800). Absent Congressional direction, it is inappropriate to consider a household member's dependency on the Debtor when determining household size; accordingly, household should be understood in the ordinary sense of the word.

The Court finds the "heads on beds" approach more logical to the roommate or third-party living situation. Congress did not state that two unrelated roommates or a cohabitating couple should not be counted as part of the same household. In the absence of Congressional guidance, it is unreasonable to conclude that two persons living in the same home are not a part of the same household.

In this case, the Debtor and his Roommate live together in the same house and it would be counterintuitive to conclude that the two are not a part of the same household. The Debtor incurs expenses due to having two persons residing in his house and the Roommate recognizes this fact by contributing $900 to the household expenses each month. Restricting the Debtor to a household size of one would be inequitable, as he incurs additional household expenses due to maintaining a house of two individuals. Therefore, the Debtor is entitled to a household size of two.

### B. Current Monthly Income

█ Since the Debtor is entitled to count his Roommate in household size, the remaining question is how much of his Roommate's income should be in his current monthly income. The UST argues that if the Debtor is entitled to a household size of two he must include all of the Roommate's income in his current monthly income. The Debtor contends that he does not need to include all of his Roommate's income, but only that which is used to pay for the household expenses of the Debtor pursuant to § 101(10A)(B). Further, the Debtor contends that the $900 in

Roommate contributions only goes towards the Roommate's share of the household expenses and therefore does not need to be included in current monthly income.

The Debtor has the better of this argument. Section 101(10A)(A) defines income earned by the Debtor, stating that current monthly income is "from all sources that the debtor receives." Section 101(10A)(B) specifically addresses income from third-parties, referencing an "entity other than the debtor" who pays for household expenses of the debtor. Thus, the Code explicitly limits a third-party's contribution to current monthly income to that amount the third-party pays toward the household expenses of the debtor. Including all of the Roommate's income would do violence to this statutory directive.

■ The question remains whether the Roommate's $900 contribution falls under the definition of § 101(10A)(B). The answer is yes. The household expenses of the Debtor, such as rent, food, and utilities, include the Roommate's expenses. The Roommate's $900 contributions benefit the Debtor by decreasing the household expenses the Debtor would otherwise have to pay. It would distort the meaning of the statute to construe this payment as only for the Roommate's personal expenses. Therefore, under § 101(10A)(B), the Debtor must include the Roommate's $900 contribution.

In summary, the Debtor is (1) entitled to claim a household size of two and (2) required to include his Roommate's $900 monthly contributions in current monthly income on his Means Test. As noted above, using these parameters, no presumption of abuse arises under the Means Test.

## V.  11 U.S.C. § 707(b)(3)

■ The Debtor's financial situation under § 707(b)(3) does not demonstrate abuse. The Court finds that the Debtor is not required to include all of the Roommate's income in current monthly income and similarly the Debtor need not include all of the Roommate's income in his Schedule I. Without the Roommate's income included in the Debtor's Schedule I, the totality of the Debtor's financial situation under § 707(b)(3) does not show abuse and the case should not be dismissed for this reason.

## VI.  Conclusion

It is ordered denying the UST's motion to dismiss in its entirety.