**In re Stacey L. BOSTWICK, Debtor.**

**No. BKY 08–46026.**

United States Bankruptcy Court,
D. Minnesota.

June 23, 2009.

---

David M. Burns, Ian Ball, Attorney at Law, Minneapolis, MN, for Debtor.

## MEMORANDUM OPINION AND ORDER

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for trial on June 9, 2009 on the objection of the chapter 13 trustee, Jasmine Z. Keller, to confirmation of the debtor's plan. Tom Johnson appeared on behalf of the trustee. David M. Burns and Ian Ball appeared on behalf of the debtor, Stacey L. Bostwick. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 151, 157(a) and (b)(1), and 1334(a) and (b); and Local Rule 1070–1. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (L).

## FACTS

1. Stacey Bostwick filed a chapter 13 petition and plan on November 19, 2008. She is single and has no dependents.

2. Bostwick stated on line 11 of her original B22C form that her current monthly income was $4,166.00, or $49,992.00 per year. She based her current monthly income solely on her salary and she indicated she lived in a household of two. Her plan provides that she will pay all of her projected disposable income, which she calculated to be $270.00 per month, to the trustee for thirty-six months.

3. The median family income for a one-person household in the state of Minnesota at the time Bostwick filed her petition was $45,832.00, and the median family income for a two-person household was $59,778.00.

4. Bostwick has a bachelor's degree in history and a master's degree in urban studies. She is employed as a project manager by Powderhorn Residents Group in Minneapolis, where she works on issues related to rental housing, home ownership and foreclosure prevention.

5. Bostwick lives in a house in Brooklyn Center. She rents the house from Bradley Apelgren, who does not live in the house. Bostwick shares the house with Brian Weis, who has a separate lease with Apelgren.

6. Bostwick and Weis each pay $800.00 per month in rent to Apelgren. Because Bostwick and Weis have separate leases that do not provide for joint and several liability, Bostwick would not have to pay an additional $800.00 per month to the landlord should Weis stop paying his rent or terminate his lease.

7. The house has three bedrooms. Bostwick has exclusive use of one bedroom, Weis has exclusive use of

a second bedroom, and the third bedroom, which is currently unoccupied, is intended to be rented separately to a third person. Bostwick and Weis share the house's bathroom, kitchen, living room, yard, and laundry machines. However, they have separate garage stalls and separate storage areas in the basement. The house has two common entrances. Their bedrooms have no exterior entrances, opening only into a common hallway. The bedroom doors can only be locked from the inside.

8. Bostwick and Weis purchase their own groceries, cleaning products, and toiletries. They cook their meals separately.

9. Utility bills for the house are in Apelgren's name and are sent to the house. The tenants are responsible for splitting the cost of gas, water, trash, and electricity. Bostwick and Weis each pay half. If Apelgren were to find a tenant for the third bedroom, the three tenants would each pay a third of the utility costs. If Weis were to terminate his lease or otherwise fail to pay his share, Bostwick would be responsible for the full amount of the utility bills.

10. The utility bills for the months of November 2008 through May 2009 were typical of the monthly utility expenses for Bostwick and Weis during the six-month current monthly income period. Each tenant's average monthly utility expenses were approximately: $101.00 for gas, $134.00 for electric, $37.00[1] for water and sewer, and $20.00[2] for trash, for a total of $292.00 per person per month.

These amounts are higher than the $260.00 in projected monthly gas, electric, water, sewer and trash expenses on the debtor's Schedule J (Expenses), which she used to arrive at her average monthly expense total of $2,604.00.

11. On February 6, 2009, the trustee objected to the confirmation of Bostwicks chapter 13 plan, arguing that Bostwick should have included Weis's rent and utility bill payments in her currently monthly income and that 11 U.S.C. § 1325(b)(4) requires her to make plan payments for sixty months.

12. On February 16, 2009, Bostwick amended line 7 on her B22C form to include $260.00 per month in her income for "amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose" The $260.00 amendment represented Weis's contribution to the house's utility expenses. As a result of the addition of Weis's $260.00 per month, Bostwick amended her current monthly income to $4,426.00 per month, or $53,112.00 per year. Like Bostwicks share, Weis's contribution should be $292.00, which would bring Bostwicks current monthly income up to $4,458.00, for a total of $53,496.00 per year.

## DISCUSSION

The issue is whether the debtor's chapter 13 plan, which proposes to pay $270 per month for thirty-six months, may be confirmed over the objection of the trus-

---

1. This figure accounts for quarterly billing.

2. This figure accounts for alternate monthly billing.

tee. 11 U.S.C. § 1325 governs the confirmation of a chapter 13 plan. Section 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). Bostwick's plan does not propose to pay all claims in full. Consequently, the plan may not be confirmed unless it provides that all of Bostwick's projected disposable income will be paid to the trustee during the applicable commitment period. "Disposable income" is the debtor's "current monthly income" less "reasonably necessary" expenditures. 11 U.S.C. § 1325(b)(2).

## I. Current Monthly Income

The first step of determining projected disposable income is to determine current monthly income. Obviously Bostwick's salary is part of her current monthly income. Current monthly income also includes "any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor" 11 U.S.C. § 101(10A)(B). The trustee argues that if Bostwick claims a household of two, she must include on her B22C form any amounts paid by Weis toward the household's expenses. The trustee asserts that Bostwick must include her roommate's rent and utility payments in her current monthly income.

The trustee is correct that the statute requires Bostwick to include in her current monthly income "any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor." 11 U.S.C. § 101(10A)(B). To the extent that another person's contributions are used to support a debtor, a debtor must include them in her current monthly income. *In re Ellringer*, 370 B.R. 905, 911 (Bankr.D.Minn.2007). This is so irrespective of whether the contributing entity is a member of the debtor's household or not. *Id.*

### A. The roommate's contributions to shared utility expenses are included in the debtor's current monthly income.

Bostwick and Weis have separate leases, but have shared responsibility for utilities. If Weis were not living in the house with Bostwick, she would be responsible for the full amount of the utility expenses. Clearly utilities are household expenses. Because Weis and Bostwick share responsibility for the utilities, and because Weis's contributions benefit Bostwick by decreasing her household utility expenses, Weis's utility payments are "for household expenses" and Bostwick must include Weis's contributions to their shared utility expenses in her current monthly income. If Bostwick includes Weis's average monthly utility payments of $292.00 as amounts paid on a regular basis for the household expenses of the debtor, then her current monthly income is $4,458.00, or $53,496.00 per year.

### B. The roommate's rent payment is not a household expense of the debtor and is not included in the debtor's current monthly income.

The trustee argues that the statutory language, "household expenses of the

debtor or the debtor's dependents," is synonymous with "expenses of the debtor's household," and the trustee would therefore include Weis's rent in Bostwicks current monthly income calculation. *See* 11 U.S.C. § 101(10A)(B). I disagree. The statute directs us to look at the individual debtor and her dependents, if any, and ascertain how much those individuals expend for household purposes. In some cases the result will be the same, but in this case, where there are two unrelated roommates and neither is a dependent of the other, the distinction between the statutory language and the trustee's paraphrasing is critical. Bostwick and Weis each have some household expenses which are not shared, e.g., their individual cell phones, individual land lines, and independent rent obligations. If Weis were to default on his rent payments or terminate his lease, Bostwick would not be responsible for paying his rent and could continue to live in the house. Weis's rent liability is not a household expense *of the debtor or the debtor's dependents*. Bostwick does not benefit from Weis's rent payments, nor is she responsible for them. As a result, Weis's payment of his own rent is not included in Bostwicks current monthly income.

## II. Reasonably Necessary Expenditures

The second step in determining projected disposable income is to calculate "reasonably necessary" expenditures. 11 U.S.C. § 1325(b)(2). Congress has created a formulaic calculation of this amount for debtors whose current monthly income exceeds that of the median income for a household of the same size as the debtor's. 11 U.S.C. § 1325(b)(3). However, Congress has not defined "reasonably necessary" expenditures for below-median income debtors. When a debtor is below-median income, her projected disposable income is not calculated in the fictional world of 11 U.S.C. § 1325(b)(3) and the B22C form. Instead, below-median income debtors examine their actual expenses. *See Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 659–60 (8th Cir.2008); *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 315 (1st Cir. BAP 2007) (Said most directly, the object is not to select the right form, but to reach a reality-based determination of a debtor's capabilities to repay creditors!). In order to determine whether Bostwick is subject to § 1325(b)(3), first I must decide whether Bostwick resides in a household of one or two.

### A. The debtor lives in a household of two.

■ Bostwick claims to live in a household of two, which includes her roommate. The trustee argues that Bostwick may only claim a household of one. If the trustee is right, then the debtor's reasonably necessary expenditures would be calculated under § 1325(A)(3), using form B22C. If the debtor is right, she could deduct her actual expenses.

■ I have previously addressed the meaning of "household" in the context of § 1325(b)(4) and concluded that because "11 U.S.C. § 101(39A)(A) defines the 'median family income' as 'the median family income both calculated and reported by the Bureau of the Census,'" it is only fair to use the Census Bureau's definition of household: "all of the people, related and unrelated, who occupy a housing unit." *Ellringer*, 370 B.R. at 910–11 (citing U.S. Census Bureau, Current Population Survey (2004), *available at* http://www.census.gov/population/www/cps/cpsdef.html). *See also In re Smith*, 396 B.R. 214 (Bankr. W.D.Mich.2008) (agreeing with *Ellringer's* use of Census Bureau definition); *In re*

*Fleishman,* 372 B.R. 64 (Bankr.D.Or.2007) (applying Census Bureau definition of "household" as starting point to determine household size for chapter 13 plan confirmation). Generally, a single-family home shared by unrelated persons is a single housing unit whose occupants comprise a single household, and the residence shared by Bostwick and Weis is no exception. The relationship among residents is not a consideration in the Census Bureau's definition, and nothing in the Bankruptcy Code compels unique treatment for households comprised of unrelated members.

The Census Bureau considers whether "A house, an apartment or other group of rooms, or a single room, . . . is occupied or intended for occupancy as separate living quarters; that is, when the occupants do not live and eat with any other persons in the structure and there is direct access from the outside or through a common hall" U.S. Census Bureau, Current Population Survey (2008), *available at* http://www. census.gov/population/www/cps/cpsdef.html. The criteria of separateness and direct access are not met here.

██ Although Bostwick and Weis each are entitled to private use of some parts of the house—each has a separate bedroom, storage area and parking stall—it remains a single-family home, with a shared bathroom, kitchen, living room, yard, and laundry. The trustee argues that the separate leases and separate bedrooms have transformed the single-family home into a rooming house, but Bostwick lives with Weis as two ordinary roommates might, despite their separate leases. Because of the layout of the house, it is not possible for Bostwick to enter her bedroom without passing by their living room or kitchen. There is no direct access from the outside. There are times that they are both in the kitchen or living room. They do not eat together, but they share a refrigerator, a

microwave oven and a stove. Bostwick must cross Weis's basement storage space to get to the laundry machines. None of this rises to the level of "separateness" that the Census Bureau's definition of housing unit requires. In fact, the Census Bureau's definition specifically includes "unrelated people sharing a housing unit such as partners or roomers" *Id.* ("A household includes . . . all the unrelated people, if any, such as lodgers, foster children, wards, or employees who share the housing unit. A person living alone in a housing unit, or a group of unrelated people sharing a housing unit such as partners or roomers, is also counted as a household.").

Although the Census Bureau excepts "group quarters" from its definition of "household," the exception is limited to unusual housing situations unlike the common roommate situation presented in this case. According to the Census Bureau, group quarters are "noninstitutional living arrangements for groups not living in conventional housing units or groups living in housing units containing ten or more unrelated people or nine or more people unrelated to the person in charge." *Id.* Bostwick and Weis, despite their separate leases, are a single household for the purposes of 11 U.S.C. § 1325(b)(4), and Bostwick is entitled to claim a household of two.

## B. The debtor has below-median income.

██ Bostwicks current monthly income includes her salary and Weis's utility contributions, for a total of $4,458.00 per month, or $53,496.00 per year. That is less than $59,778.00, the Minnesota median family income for a two-person household on the date of Bostwicks bankruptcy filing, so she is a below-median income debtor. Although Bostwick included additional in-

come of $100.00 per month on her Schedule I for her anticipated tax refund, it is not included in this calculation because the Bankruptcy Code looks only to income actually received during the determination period. 11 U.S.C. § 101(10A)(A).

### C. Because the debtor has below-median income, her reasonably necessary expenditures are calculated based on her actual expenses.

Because Bostwick is a below-median income debtor, § 1325(b)(3) does not apply and her reasonably necessary expenditures are instead calculated based on her actual expenses. No one has challenged the correctness or reasonableness of the items listed on Bostwicks Schedules I and J, which she has used to calculate her projected disposable income. Her Schedule J lists expenses of $2,604.00. Because Bostwick is responsible for all of the household utilities, her utility expenses must be adjusted to include the full monthly amounts due for electricity, heating fuel, water, sewer and trash. That amount is $584.00, which is $324.00 more than the $260.00 she claimed for those utility expenses on her Schedule J. This would make her expenses $2,928.00. Her Schedule J also does not include any taxes or other payroll deductions because they are deducted on Schedule I (income). Those expenses total $1,392.00. Adding them to her Schedule J expenses increases her total expenditures to $4,320.00 per month.

To determine Bostwicks projected disposable income, the final step is to subtract her reasonably necessary expenditures, $4,320.00 per month, from her current monthly income, $4,458.00. The difference, $138.00, is her projected disposable income. Because $138.00 is less than her proposed plan payment of $270.00, her plan satisfies the statutory requirement that she pay all of her projected disposable income to the trustee each month.

### III. The debtor's applicable commitment period is three years.

The final issue is whether Bostwick may pay her plan over thirty-six months, or whether she is subject to a sixty month commitment period. A debtor's "applicable commitment period" may be three years unless:

... the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4 ....

11 U.S.C. § 1325(b)(4). Because Bostwick is entitled to claim a household of two and her currently monthly income multiplied by twelve is less than the Minnesota median family income for a two-person household on the date of Bostwicks bankruptcy filing, Bostwick is a below-median income debtor and is entitled to a three-year applicable commitment period under 11 U.S.C. § 1325(b)(4)(II).

### Conclusion

The debtor's plan proposes to pay more than her projected disposable income for her applicable commitment period.

THEREFORE, IT IS ORDERED:

The debtor's plan dated November 4, 2008, filed November 19, 2008 is confirmed.