Affirmed by published opinion. Judge AGEE wrote the opinion, in which Judge KING concurred. Judge WILKINSON wrote a dissenting opinion.
OPINION
AGEE, Circuit Judge:
In this direct appeal from the United States Bankruptcy Court for the Eastern District of North Carolina, we address a question of first impression in the circuit courts of appeal: in light of the 2005 amendments to the Bankruptcy Code, 11 U.S.C. § 101 et seq. (“the Code”), codified by the Bankruptcy Abuse Prevention and Consumer Protection Act (“BAPCPA”), Pub.L. No. 109-8, 119 Stat. 23 (2005), how is the “household” size of a debtor seeking bankruptcy relief to be calculated under Chapter 13. Finding no error in the bankruptcy court’s method of calculating the Debtor’s household size based on how many individuals operate as an “economic unit” with the Debtor, we affirm the order of the bankruptcy court denying the Debt- or’s motion for confirmation with leave to amend the Debtor’s “disposable income calculation and plan to reflect the household size [of five].” (J.A. 100.) See In re Johnson, No. 10-07244-8-JRL, 2011 WL 5902883 (Bankr.E.D.N.C. July 21, 2011).
*226 I.
The facts are not in dispute. Tanya Rene Johnson (“the Debtor”) filed a voluntary petition for Chapter 13 bankruptcy in September 2010. Robert R. Browning was appointed as Trustee. Upon receiving notice of the Debtor’s motion for confirmation of a plan, the Debtor’s ex-husband, William H. Zimmer (“the Creditor”), objected. The basis for the Creditor’s objection was that the proposed plan overstated the Debtor’s household size, resulting in an inaccurate calculation of her monthly expenses. The Creditor maintained that as a result of this alleged error, the Debtor’s proposed Chapter 13 plan improperly showed a “disposable monthly income” insufficient to make payments on two unsecured loans for which the Creditor was jointly liable with the Debtor.
Prior to the bankruptcy court’s consideration of the objections, the parties stipulated to the following facts: the Debtor and Creditor share joint custody of then-two minor sons. Neither party pays child support; they share “expenses for clothing, school supplies, and other incidental expenses for their sons based on where the sons live when an expense is necessary.” (J.A. 92-93.) Out-of-pocket medical expenses are divided equally. By oral agreement, the Debtor’s sons reside with her and are in her care and custody for 204 days each year. The Debtor’s current husband has joint custody of three children from his previous marriage: two minor sons and a nineteen-year-old daughter. The Debtor’s step-children reside with her and her husband approximately 180 days per year.[1]
The Debtor’s proposed Chapter 13 plan claimed a household of seven members, counting individually each person who resided in her home for any period of time within the past six months (i.e., the Debt- or, her husband, her two children, and her three step-children). The Creditor asserted that the Debtor did not actually have seven members of her household because the five children and step-children did not live at her residence full-time. He contended that rather than simply counting the number of “heads on the bed” to determine household size, the Debtor’s plan should use a method that better approximated the actual economic impact of each individual on the Debtor’s expenses. He asserted that such an approach would result in a lower calculation of her monthly expenses such that she would have income available with which to pay toward her unsecured debts as part of a proper Chapter 13 plan.
In examining the parties’ dispute, the bankruptcy court observed that the Code does not define “household,” there was no binding precedent on point, and that other bankruptcy courts followed three different approaches to define that term. In re Johnson, 2011 WL 5902883, at *1-*2. As described in greater detail below, those three approaches are: the “heads-on-beds” approach that follows the Census Bureau’s broad definition of a household as “all the people who occupy a housing unit,” without regard to relationship, financial contributions, or financial dependency; the “income tax dependent” method derived from the Internal Revenue Manual’s (“IRM”) definition that examines which individuals either are or could be “included on the debtor’s tax return as dependents”; and the “economic unit” approach that “assesses the number of individuals in the household who act as a single economic unit by including those who are financially dependent on the debtor, those who financially *227 support the debtor, and those whose income and expenses are inter-mingled with the debtor’s.” (J.A. 96-98.)
The bankruptcy court adopted a variation of the “economic unit” approach, first assessing the number of individuals whose income and expenses are intermingled with the Debtor’s, and then calculating how much time any part-time residents were members of the Debtor’s household. In adopting the “economic unit” approach, the bankruptcy court noted that the other two definitions were inconsistent with the purpose of the Code and were the least flexible in terms of adapting to an individual debtor’s circumstances.
In deciding that part-time residents should count as part-time members of the Debtor’s “household,” the bankruptcy court acknowledged that “[d]ividing children into fractions is not ideal,” but concluded that this additional step in applying the economic unit approach best “cap-turefd] the nuances of familial support and bonds” and enabled the court to “account for dependents who reside with the debtor on a part-time basis ... in calculating variable costs such as food, utilities, and out-of-pocket health care expenses.” (J.A. 98, 99.) In re Johnson, 2011 WL 5902883, at *2-*3. Accordingly, the court relied on the parties’ stipulated facts to determine that each of the Debtor’s two sons constituted .56 members of the Debtor’s household (residing with her 204 days out of a possible 365), and that each of the Debtor’s three step-children constituted .49 members of her household (residing with her 180 days out of a possible 365).[2] Id. at *3.
Implementing this fractional economic unit approach thus resulted in the Debtor having a total of 2.59 children in her household full-time, which the court then rounded up to three children. Thus, the Debtor, her husband, and the deemed three children yielded a “household” of five persons. The bankruptcy court also noted that the Debtor could claim “any particular expenses ... that the debtor must meet given the family’s total size of seven” as itemized costs in an amended proposed plan. (J.A. 99-100.) Id. Consequently, it denied the Debtor’s motion for confirmation of a plan, but granted leave to amend the plan based on re-calculation of the Debtor’s disposable income based on a household size of five.
The bankruptcy court certified the issue of the determination of the “household” size for direct interlocutory appeal. We granted the Debtor’s petition for permission to appeal, thus satisfying the requirements for the appeal under 28 U.S.C. § 158(a)(3), (d), and Fed. R. Bankr.P. 8003(d).[3]
II.
A. Statutory Framework
We review “the appropriate statutory interpretation of the Bankruptcy Code ... de novo.” Botkin v. DuPont Cmty. Credit Union, 650 F.3d 396, 398 (4th Cir.2011). In undertaking this review, we first set forth the relevant statutory provisions, and then describe the approaches bankruptcy courts have adopted as well as the parties’ arguments relating to each. For the reasons then articulated, we conclude that there is no statutorily mandated approach and that the Code’s purposes were best served in this case by *228 the “economic unit” approach as applied by the bankruptcy court to calculate the Debtor’s “household” size. Accordingly, we affirm the order of the bankruptcy court.
In Hamilton v. Lanning, — U.S.-, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), the Supreme Court summarized the key features of a Chapter 13 bankruptcy proceeding:
Chapter 13 ... provides bankruptcy protection to “individual[s] with regular income” whose debts fall within statutory limits. 11 U.S.C. §§ 101(30), 109(e). Unlike debtors who file under Chapter 7 and must liquidate their nonexempt assets in order to pay creditors, see §§ 704(a)(1), 7126, Chapter 13 debtors are permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income, see §§ 1306(b), 1321, 1322(a)(1), 1328(a). A bankruptcy trustee oversees the filing and execution of a Chapter 13 debtor’s plan. § 1322(a)(1); see also 28 U.S.C. § 586(a)(3).
[I]f a trustee or an unsecured creditor objects to a Chapter 13 debtor’s plan, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or “provides that all of the debtor’s projected disposable income to be received” over the duration of the plan “will be applied to make payments” in accordance with the terms of the plan. 11 U.S.C. § 1325(b)(1); see also § 1326(b)(1) (2000 ed.).
Id. at 2468-69.
One of the many changes to the Code arising from the BAPCPA was the tightening of how a Chapter 13 debtor’s “projected disposable income” is calculated. Although “projected disposable income” remained an undefined term in the Code, the BAPCPA “specified in some detail how ‘disposable income’ is to be calculated.” Id. at 2469. “ ‘Disposable income’ is now defined as ‘current monthly income received by the debtor’ less ‘amounts reasonably necessary to be expended’ for the debtor’s maintenance and support, for qualifying charitable contributions, and for business expenditures. § 1325(b)(2)(A)(i) and (ii) (2006 ed.).” Id. “The phrase ‘amounts reasonably necessary to be expended’ in § 1325(b)(2) is ... newly defined” and how it is calculated depends on whether the debtor’s current monthly income is above or below the median for his or her state. Id. at 2470. The determination of how to calculate a debtor’s “amounts reasonably necessary to be expended” is based, in part, on the size of a debtor’s “household.” See § 1325(b).[4] “Household” is not defined in the Code.
Rather than including “the full amount for ‘maintenance or support’ ” (the calculation for below-median-income debtors), an above-median-income debtor can only include “certain specified expenses.” Hamilton, 130 S.Ct. at 2470 (citing §§ 707(b)(2), 1325(b)(3)(A)). Section 1325 directs above-median-income debtors to use the “means test” set forth in § 707(b)(2) as the basis for calculating those expenses. The *229 “means test” formulation “is reflected in a schedule (Form 22C) that a Chapter 13 debtor must file.” Id. at 2470 n. 2. Section 707(b)’s means test uses standardized expenditure figures in lieu of an above-median income debtor’s actual monthly living expenses. Those amounts are derived from the Internal Revenue Service (IRS) National Standards and Local Standards tables for the geographic area in which the debtor resides. Debtors are also permitted to include their actual monthly expenses for certain categories of expenditures falling under the IRS’s “Other Necessary Expenses.” The calculations under § 707(b) are based on a fixed number of individuals: “the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.” § 707(b)(2)(A)(ii)(I). The term “dependent” as used in § 707(b) is not defined in the Code either.
The means test “supplants the pre-BAPCPA practice of calculating debtors’ reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations.” Ransom v. FIA Card Services, N.A., — U.S. -, 131 S.Ct. 716, 722, 178 L.Ed.2d 603 (2011). Adopting the means test was “ ‘[t]he heart of [BAPCPA’s] consumer bankruptcy reforms,’ ” Id. at 721 (quoting H.R.Rep. No. 109-31, pt. 1, p. 2 (2005), 2005 U.S.C.C.A.N. 88, 89), and was designed “to help ensure that debtors who can pay creditors do pay them.” Id. (emphasis in original).
B. Statutory Analysis
1. Overview
As an initial matter, the Debtor briefly posits that resolving which method should be used to calculate her household size may not ultimately be determinative of her case. This is so, in her view, because under either parties’ method of calculating household size (i.e., five or seven members), the Debtor remains an above-median-income debtor under § 1325. Consequently, she must use the means test set forth in § 707(b)(2), which directs a debtor to include herself, her “dependents,” and in appropriate cases her spouse, in the required calculations. And she observes that the sum of those individuals may not be the same as her “household” size, depending on how “dependents” and “household” are each defined. The Debtor contends that the “dispositive” issue in her ease will be the application of § 707(b)’s means test, which requires a determination of who are her “dependents.” On this matter, the Debtor contends the Court should “adopt an ordinary and common meaning of the word dependent” and that the meaning of “household” is irrelevant. (Br. for Appellant at 14-15.)
The Creditor agrees that “[t]he Court could recognize that the definition of ‘dependent’ [in § 707(b)(2) ] is the real issue,” but does not develop this idea further. (Br. for Appellee at 24.) Instead, he focuses on why § 707(b)(2)’s use of the term “dependent” should not be used as a basis for defining “household” according to the IRS definition of “dependents.”
While the Debtor is correct that her “household” size may not be the “disposi-tive” inquiry in determining her disposable income, the determination of “household” remains a significant component of the § 1325(b) scheme. The purpose of § 1325(b) is to determine a debtor’s ability to pay creditors by determining his or her projected disposable income. The complex formula used for that calculation deducts the debtor’s expenses (“amounts reasonably necessary to be expended”) from his or her monthly income. As an initial step in determining the debtor’s “amounts reasonably necessary to be expended,” § 1325(b)(3) directs debtors to calculate *230 the relevant median family income for his or her geographic area based on the debt- or’s “household” size. Accordingly, we decline the Debtor’s invitation to ignore how the bankruptcy court calculated her “household” size.
The bankruptcy court’s order is limited to the § 1325(b) determination of how the Debtor should calculate her “household” size. In re Johnson, 2011 WL 5902883, *1-*3. It resolved that issue and ordered the Debtor to file an amended Form 22C and proposed plan based on the court’s conclusion that she has a household of five. In so doing, it did not specifically address how the § 707(b) means test calculation should be performed. Accordingly, what the Debtor identifies as the “dispositive” means test calculations have not yet been performed or ruled upon in the bankruptcy proceedings. It would be premature for us to consider that issue now.[5]
We also observe that the language in § 707(b)(2)(A)(ii)(I) referring to “the debt- or, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not a dependent,” is not the totality of the means test calculation.[6] In addition to the word “household” being used in other parts of § 707(b), see, e.g., § 707(b)(2)(A)(ii)(II), a debtor is also permitted to claim certain itemized deductions based on actual expenses for items such as “housing and utilities” if they are “reasonable and necessary.” E.g., § 707(b)(2)(A)(ii)(V). At various times, both §§ 1325(b) and 707(b) refer alternatively to a debtor’s “dependents,” “dependent child[ren],” “household,” “family,” and “immediate family.” As discussed infra pp. 233-34, in order to understand what Congress meant by each of these undefined terms, they must be understood in context and in light of each other. Our interpretation of “household” — one of the first of these terms used in a Chapter 13 debtor’s calculation of his or her disposable income — will impact how these other terms are understood as well.
In sum, a debtor’s entire § 707(b) means test calculation will be affected by the threshold determination of how many people are part of her “household,” as determined for purposes of § 1325(b). Moreover, the bankruptcy court’s review of the appropriateness of a debtor’s means test *231 calculations, e.g., whether the debtor is claiming “reasonable and necessary” additional sums for his or her “housing and utilities,” will likely also be informed by the debtor’s § 1325(b) “household” size. The bankruptcy court appears to have recognized such nuances to the means test calculations when noting that the Debtor could include “any particular expenses [that] exist that the [DJebtor must meet given the family’s total size of seven” “in an amended Form 22C and provide documentation of those costs.” (J.A. 100.) In re Johnson, 2011 WL 5902883, at *3. For all of these reasons, we conclude that it is necessary for us to resolve whether the bankruptcy court properly calculated the Debtor’s “household” size under § 1325(b).
2. Calculating “Household” Size
As noted, § 1325(b)(2) contains the provisions for calculating a debtor’s “disposable income” in order to assess his or her ability to pay debts as part of a Chapter 13 plan. At its most basic level, the relevant formula is that the debtor’s disposable income equals the debtor’s “current monthly income” “less amounts reasonably necessary to be expended.” § 1325(b)(2). A debtor’s “household” size is relevant to determining how to calculate certain parts of the debtor’s “amounts reasonably necessary to be expended.” § 1325(b)(3).
Despite the centrality of the term to the requisite analysis, the Code does not state how the size of a debtor’s “household” under § 1325(b) is to be calculated for determining his or her disposable income. From this void comes the primary issue before us: whether the bankruptcy court erred in using a fractional economic unit approach to determine the Debtor’s “household” size for purposes of conducting its review of the disposable income calculation.
a. The Party’s Arguments
The Debtor would have us answer this query in the affirmative, contending that the bankruptcy court erred in looking past the “ordinary and common meaning of statutory words that Congress declined to define.” (Br. for Appellant 16.) She asserts that her proffered methodology, the heads-on-beds approach, is consistent with “[t]he expansive [dictionary] definition of household” and that it is “logical and ‘fair’ ” to rely on the Census Bureau’s correspondingly broad definition of “household” because § 1325 refers debtors to Census Bureau statistics to determine a “median family income.”[7] (Id. at 18.) She also posits that if Congress had intended to require familial or economic ties to limit the definition of “household,” it could have used a word that connotes such limits, such as the terms “family” or “dependents,” which are used elsewhere in the Code. (Id. at 17-19.) She thus concludes that the heads-on-beds approach best reflects what Congress intended by “household,” and that the bankruptcy court usurped Congress’ legislative function by utilizing any other definition of “household.” (Id. at 20-23.)
In response, the Creditor asserts that undefined terms are construed by the terms that surround it, and that the bankruptcy court correctly rejected the heads-on-beds approach and adopted the economic unit approach. He contends that the Code’s purpose and text are best served by using a definition of “household” that is based on the financial interdependence of the debtor and those persons comprising the debtor’s “household.” (Br. for Appel- *232 lee 14-16.) The Creditor argues that the heads-on-beds approach is too broad and “can lead to anomalies that are inconsistent with the purpose of the means test” and the Code because it merely counts individuals based on presence in the debt- or’s residence without examining whether they are part of the debtor’s financial situation. (Id. at 16.) Furthermore, he submits that the Census Bureau’s expansive definition of “household” is not incorporated into the Code and that adopting it does not make sense given the different objectives of the Census and bankruptcy proceedings. In conclusion, the Creditor posits that the bankruptcy court’s approach “provides an accurate snapshot of the Debtor’s household size when considered over a period of time,” and thus was an appropriate method to calculate her household “given the complexities of today’s family structure.” (Id. at 19.)
Neither party advocates that the bankruptcy court should have used the income tax dependent method of calculating household size. Indeed, other than defining the approach, the Debtor does not address it at all. The Creditor posits that this approach is inconsistent with the purpose of the Code, but submitted during oral argument that it was at least a better approach than the “heads on beds” definition, should the court not adopt the “economic unit” approach.
b. Analysis
As always, we begin with the statute, “bearing in mind that we should give effect to the legislative will as expressed in the language.” United States v. Murphy, 35 F.3d 143, 145 (4th Cir.1994); see also Pennsylvania Dep’t of Public Welfare v. Davenport, 495 U.S. 552, 557-58, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) (stating that construction of terms in the Bankruptcy Code “is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself’). Where statutory language is “facially clear and ‘within the constitutional authority of [Congress], the sole function of this [C]ourt[ ] is to enforce it according to its terms.’ ” Murphy, 35 F.3d at 145 (internal quotation marks and citation omitted). In order “[t]o determine whether the language is plain, we consider ‘the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.’” Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 248 (4th Cir.2004) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)).
In undertaking this inquiry, words that are not defined in the relevant statutory provisions are typically “interpreted as taking their ordinary, contemporary, common meaning.” United States v. Lehman, 225 F.3d 426, 428 (4th Cir.2000) (quoting Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)). The Court “customarily turn[sj to dictionaries for help in determining whether a word in a statute has a plain or common meaning.” Nat. Coalition for Students v. Allen, 152 F.3d 283, 289 (4th Cir.1998). In this instance, however, reviewing the dictionary definition of “household” does not resolve the matter because this term has multiple definitions of varying scope and consequence. For example, Black’s defines the noun “household” as “1. A family living together. 2. A group of people who dwell under the same roof.” Black’s Law Dictionary 744 (7th ed.1999). Webster’s defines the term as “those who dwell under the same roof and compose a family: a domestic establishment; specifically]: a social unit comprised of those living together in the same dwelling place.” *233 Webster’s Third New International Dictionary (Unabridged) 1096 (2002 ed.).
Although the Debtor relies on the expansive definition of the word to support her argument, by doing so, she necessarily overlooks other aspects of these dictionary definitions that are narrower, and would cut against her interpretation. Thus while the heads-on-beds approach looks solely to how many individuals reside under one roof, that definition ignores other components of the dictionary definitions of “household” that limit it to individuals who comprise a “family” or “a domestic establishment.” These components of the “ordinary” dictionary definition suggest that a “household” also consists of something beyond co-residency. It is therefore not evident from the word “household” alone which common and ordinary definition Congress intended to apply in the § 1325(b) analysis. A statutory interpretation of “household” could be crafted in several different ways that would yield different household sizes depending on which dictionary definition is used.
As noted, it is a “cardinal rule” of statutory interpretation that “statutory language must be read in context [because] a phrase gathers meaning from the words around it.” Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 596, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) (citation and internal quotation marks omitted). In some cases, “[t]he meaning of a word that appears ambiguous if viewed in isolation may become clear when [it] is analyzed in light of the terms that surround it.” Smith v. United States, 508 U.S. 223, 229, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).
Context provides some guidance in this case, but ultimately does not resolve the fundamental uncertainty of what Congress intended “household” to mean. On the one hand, Congress used the word “household” as opposed to “family,” “dependent child,” or “dependent,” all of which are used elsewhere in the surrounding and cross-referenced Code provisions. Consistent with the principle that “[t]he use of different terms within related statutes generally implies that different meanings were intended,” this would often mean that Congress intended the term “household” to mean something other than what those terms mean. See Cunningham v. Scibana, 259 F.3d 303, 308 (4th Cir.2001) (quoting 2A Norman J. Singer, Sutherland’s Statutes and Statutory Construction, § 46.06, at 195 (6th ed.2000)). On the other hand, as set forth above, the dictionary definitions of “household” overlap with each of these terms to varying degrees, as “household” may or may not be defined to include the concept of familial connection or domestic interconnectedness.
Further muddying the waters is the statute’s own use of different terms for aspects of the same calculation. Section 1325(b)(3) states that a debtor should use his or her “household” size and determine the “median family income” for “1 earner” if the household size is one; for “a family of the same number or fewer individuals” for a “household size of 2, 3, or 4 individuals”; or for “a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4” for a “household exceeding 4 individuals.” It is not entirely clear from this language whether Congress intended for the additional references to “family” to serve as qualifiers to the definition of “household,” or whether “family” simply refers to the cross-referenced “median family income” statistics the debtor is supposed to use when comparing his independently defined “household” size. In either event, it is not immediately clear how to define “family” even as part of the determination of a “household.”
*234 Similarly, § 1325(b)(3) uses the number in the debtor’s “household” to explain how a debtor is to calculate two components of the “amounts reasonably necessary to be expended” under § 1325(b)(2)(A)(i) and (B). For example, subsection (A)(i) includes expenses the debtor may have for the “maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation.” (Emphasis added.) In addition, § 1325(b)(3) instructs above-median income debtors to use § 707(b)’s means test to perform their “amounts reasonably necessary to be expended” calculation, and § 707(b) also refers to a debtor’s “dependents” as opposed to his or her “household.” Congress’ use of “dependents” in both of these other statutory provisions that directly relate to the same calculation that is to occur in § 1325(b)(3) would tend to suggest that although Congress used “dependent” and “household” at different points, they may nonetheless have related meanings.
In addition to and arising from these immediate contextual conundrums, bankruptcy courts have offered reasoned explanations for why one method of defining “household” is more or less appropriate than others based on the context within § 1325(b), the BAPCPA amendments, and the Code as a whole.[8] However, none of *235 these approaches is directly required by the statutory language and is consequently based on inference and implication to one degree or another.
These are the hallmarks of statutory language that is anything but plain. Because the term “household” “lends itself to more than one reasonable interpretation,” it is ambiguous. See Newport News Shipbuilding & Dry Dock Co., 376 F.3d at 248 (quoting United States ex rel Wilson v. Graham Cnty., 367 F.3d 245, 248 (4th Cir.2004)).[9] Accordingly, “our obligation is to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested.” Id. Put differently, where statutory language is ambiguous, we “turn to other evidence to interpret the meaning of the provision,” interpreting provisions harmoniously, where possible, or by reference to the legislative history, and always with the goal of ascertaining congressional intent. See New Cingular Wireless PCS, LLC v. Finley, 674 F.3d 225, 249 (4th Cir.2012) (internal quotation marks and citations omitted). Our next step, then, is to determine which approach best corresponds to Congress’ intent despite the ambiguous meaning of the precise text it has used.
We begin by examining whether the heads-on-beds approach best reflects Congress’ intent in requiring a debtor to determine his or her “household” size, as the Debtor contends. A handful of bankruptcy courts have adopted the heads-on-beds approach, using the Census Bureau definition of “household,” although they use different — and in some cases no — reasons to explain why. Some bankruptcy courts have stated that this definition of “household” is simply its plain meaning. E.g., In re Smith, 396 B.R. 214, 215-18 (Bankr.W.D.Mich.2008). For the reasons set forth above, we reject that conclusion. Other bankruptcy courts do not specifically identify how they reach that conclusion, but base their use of the heads-on-beds approach upon § 1325(b)’s reference to Census Bureau statistical data. In Ell-ringer, for example, the bankruptcy court concluded that because § 1325(b)(2) refers to the “median family income,” and 11 U.S.C. § 101(39A)(A) defines “median family income” by reference to the Census Bureau’s reports, “the Census Bureau provides the most appropriate definition of ‘household.’ ” Id. at 910-11; see also, e.g., In re Bostwick, 406 B.R. 867, 872-73 (Bankr.D.Minn.2009); In re Fleishman, 372 B.R. 64, 67-68 (Bankr.D.Or.2007).
We are not persuaded that Congress intended for “household” to be so broadly defined. At the outset, nothing in § 1325(b) directly or indirectly incorporates the Census Bureau’s definition of “household.” Although there is a cross-reference to the Census Bureau’s median income tables, that is not sufficient to demonstrate a congressional intent to adopt the usage utilized by the Census Bureau in its wholly separate sphere of government work. Moreover, while the use of “household” as opposed to “family” or “dependents” (terms used elsewhere in *236 § 1325(b)(2)) would indicate that the term means something different from those words, that does not automatically indicate that Congress intended for the term “household” to be synonymous with the Census Bureau’s definition and refer to any person living in a particular residence. Nothing in § 1325(b) supports the conclusion that a bankruptcy court is required, or intended to use such a broad definition.
In the absence of clear direction in the Code to use the heads-on-beds approach, the question becomes whether the bankruptcy court erred in failing to choose that method over other possible approaches. On this point, we agree with the majority of bankruptcy courts in concluding that the heads-on-beds approach using the Census Bureau’s expansive definition of “household” is inconsistent with the purpose and objectives of the Code. As noted, the Census Bureau defines a “household” as “all of the people, related and unrelated, who occupy a housing unit.” Ellringer, 370 B.R. at 911 (internal quotation marks and citation omitted). This definition serves the Census Bureau’s need to compile demographic information identifying the number of people in a particular geographic region. It is wholly unrelated to any bankruptcy purpose and does not serve the Code’s objective of identifying a debt- or’s deductible monthly expenses and, ultimately, his or her disposable income.
As the Jewell bankruptcy court observed, the Census Bureau definition is at odds with the purpose of § 1325(b) because “[i]f a person lives in the home with the debtor but the debtor does not support that person, then inclusion of that person for purposes of calculating the applicable median family income and disposable income would give rise to a faulty calculation and would result in an inaccurate figure for both.” 365 B.R. at 800; see also Herbert, 405 B.R. at 169 (criticizing the heads-on-beds approach as being “too broad”).
The calculation of a debtor’s monthly income and expenses is aimed at ensuring that debtors pay the amount they can reasonably afford to pay to creditors. It makes little sense to allow debtors to broadly define their “households” so as to include individuals who have no actual financial impact on the debtor’s expenses. The over-inclusion of individuals in a debt- or’s household size would lead to an artificially high calculation of the debtor’s “amounts reasonably necessary to be expended” each month, and thus to an incorrect determination of the debtor’s disposable income and ability to pay creditors.[10] This result would be entirely at odds with the stated purpose of the BAPCPA: “The heart of the bill’s consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism (‘needs-based bankruptcy relief or ‘means testing’), which is intended to ensure that debtors repay creditors the maximum they can afford.” H.R.Rep. No. 109-31(1), *89. Because “household” should be interpreted consistent with the context of § 1325(b), the BAPCPA, and the Code as a whole, we conclude the bankruptcy court did not err in rejecting the heads-on-beds approach.
Next, we consider whether the bankruptcy court erred in using the “economic unit” approach. As set forth above, because the text does not define “household” and leaves room for different connota *237 tions, the economic unit approach does not inherently contradict the language of § 1325(b). And unlike the heads-on-beds approach, the economic unit approach is consistent with § 1325(b), the BAPCPA, and the Code as a whole. By examining the financial interdependence of individuals to determine whether someone is an economic part of the debtor’s household, bankruptcy courts are able to avoid over- and under-inclusive results that would result by artificially defining “household” according to factors unrelated to which individuals within a residence impact the debtor’s financial situation. The approach is flexible because it recognizes that a debtor’s “household” may include non-family members and individuals who could not be claimed as dependents on the debt- or’s federal income tax return, but who nonetheless directly impact the debtor’s financial situation. See Morrison, 443 B.R. at 388; Herbert, 405 B.R. at 169; Robinson, 449 B.R. at 481-82. Accordingly, it is consistent with § 1325(b)’s purpose of identifying a debtor’s disposable income by identifying a debtor’s “amounts reasonably necessary to be expended” each month and determining what amount a debtor is able to pay to his or her creditors.
Under this method, a debtor’s “household” would include individuals who operate as an “economic unit” with the debtor: those the debtor financially supports and those who financially support the debtor. In other words, those whose income and expenses are interdependent with the debtor’s are part of his or her “household” for purposes of § 1325(b). Such financial intermingling is an appropriate factor in determining “household” size under § 1325(b)(2) because the debtor’s finances are the focal point of the Code. Indeed, § 1325(b) is specifically directed at determining a debtor’s disposable income, which is defined as currently monthly income less “amounts reasonably necessary to be expended.” § 1325(b)(2). The “amounts reasonably necessary to be expended” are calculated based, in part, on the relevant median family income for the size of the debtor’s household. Thus, the entire purpose of identifying a debtor’s household size is to use that number to determine his or her financial obligations and ability to pay. A definition of “household” that is also tailored to reflect a debtor’s financial situation focuses directly upon the ultimate purpose of the Code.
The “economic unit” approach is also consistent with other components of the § 1325(b)(2) analysis. For example, a debtor’s disposable income is based, in part, on the debtor’s “current monthly income,” a term that is defined in 11 U.S.C. § 101(10A) to mean “the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor’s spouse receive) without regard to whether such income is taxable income, derived during [a specified period of time]” “and ” “any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor’s spouse), on a regular basis for the household expenses of the debtor or the debtor’s dependents (and in a joint case the debtor’s spouse if not otherwise a dependent).... ” Id. (emphases added). Since the “plus” side of the current monthly income part of the equation would include financial contributions from various outside sources, it is also logical to include in the amount deducted therefrom the financial liability of the debtor for the members of the debtor’s “household” on the opposing side of the equation. The relevance on either side of the equation is established by the actual financial connection to the debtor, not mere physical presence or a federal income tax status. Therefore, it makes sense to define “household” with reference *238 to whether the person’s “income or expenses are inter-mingled or interdependent with [the] debtor,” and whether the individuals “are acting as a single economic unit.” See Morrison, 443 B.R. at 386. The extent to which that household member increases the debtor’s “current monthly income” due to financial contributions set forth under § 101(10A) or increases the debtor’s “amounts reasonably necessary to be expended” under § 1325(b)(2) would then be determined according to each provision. For each of these reasons, we conclude that the bankruptcy court did not err in adopting the economic unit approach in its § 1325(b) analysis.
As noted, neither party directly advances the third approach — the IRM definition and income tax dependent model— as the best method of defining “household” for § 1325(b) purposes. We agree with the Creditor that there are numerous limitations that this approach would place on the bankruptcy court’s ability to accurately determine a debtor’s household size. While there might be a case where the income tax dependent model could be feasible for § 1325(b) purposes, the case at bar ably demonstrates why that case would be a rare case indeed. In contrast to the “economic unit” approach, the income tax dependent approach fails to match the goals of the BAPCPA and the Code.
Bankruptcy courts have articulated the income tax dependent method to define a “household” as the same number of individuals as “those allowed as dependents on the taxpayer’s tax returns,” Jewell, 365 B.R. at 800, or “the people who could be or are included on the debtor’s tax return as dependents.” Morrison, 443 B.R. at 385.[11] The reason some courts have concluded that using this definition is appropriate or even required is because of § 1325(b)’s cross-reference to § 707(b). Above-median income debtors (a status determined, in part, based on the debtor’s “household” size) must use § 707(b)’s means test to determine their “amounts reasonably necessary to be expended,” and the means test includes in its formula “the debtor, the debtor’s dependents, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.” § 707(b)(2)(A)(ii)(I) (Emphasis added.) The means test specifically refers debtors to use certain IRS tables (the National Standards and Local Standards) as part of their calculations in determining deductible monthly expenses.[12] Because these provisions contain two parts of the same calculation, and because § 1325(b) refers to “household” while § 707(b) refers to “dependents,” there is some logic .to defining the terms consistently.
That said, there are three factors that— as with the Census Bureau definition— negate the appropriateness of using this definition for purposes of § 1325(b). First, neither § 707(b) nor § 1325(b) (nor any other Code provision) expressly incor *239 porates the IRS definitions. Indeed, the Supreme Court’s decision in Ransom v. FIA Card Services, N.A., - U.S. -, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), while referencing the IRS’s explanatory guidelines to clarify a point regarding how another aspect of § 1325(b) should be interpreted, expressly “emphasize[d] ... that the statute does not ‘incorporate’ or otherwise ‘import’ the IRS’s guidance.” Id. at 726 n. 7 (internal alterations omitted). Second, the IRM definition of “dependent” was created with a markedly different purpose from the Code’s definition of “household.” As the bankruptcy court in Morrison observed, “[t]he Internal Revenue Code is designed to collect tax revenue for the government” by ensuring that each person is accounted for, and that those claimed as dependents are only claimed by one individual for federal income tax purposes. 443 B.R. at 387-88. As demonstrated above, a debtor’s “household” size for bankruptcy purposes is determined in order to assess his disposable income and ability to pay creditors: a goal unrelated to tax collection. Third, § 1325(b)(2) refers to “dependents” at one point in the provision and “household” in another, even setting aside § 1325(b)’s subsequent cross-reference to § 707(b), which in turn uses both “dependents” and “household.” If Congress had intended for “household” to refer exclusively to the debtor and his or her dependents as defined for income tax purposes, it could have done so. Congress did not, and instead referred to a debtor’s “household.”
As the parties recognize, and as we explain further below, the income tax dependent approach tends to be under-inclusive for purposes of ascertaining a debtor’s household size and disposable income. Thus, for example, if narrowly defined as actually claimed dependents on the debt- or’s income tax return, this approach would not permit a debtor to include minor children who live with the debtor, but whom by formal or informal agreement the debtor does not claim on his or her tax return. Nor would it necessarily allow a debtor to claim as a member of his or her “household” step-children, a cohabiting fiance, live-in elderly parents, and the like. This would be so regardless of the actual financial contributions to the debtor’s monthly income and regardless of the real financial obligations the debtor incurred regarding those individuals. If the individual did not satisfy the IRS definition of a “dependent,” the person would not be included in the debtor’s “household” for § 1325(b) purposes, even though Congress never expressly indicated such an intent, and even though it results in an inaccurate assessment of the debtor’s financial situation.[13]
Just as the heads-on-beds approach poses the risk of skewing the calculation by being over-inclusive and thus risks misrepresenting a debtor’s ability to pay, the income tax dependent method poses an unnecessary risk of skewing the calculation by “undercounting legitimate deductions due to a debtor who financially provides for individuals he or she does not claim as dependents” on his or her tax return. Robinson, 449 B.R. at 481. Neither the income tax dependent nor the “heads-on-beds” approach best reflect the purposes of the Code — and specifically the BAPCPA *240 amendments and § 1325 — as to how a debtor’s disposable income is to be calculated. Rather than the choice between Scylla and Charybdis that these other methods pose, the economic unit approach affords bankruptcy courts the ability to calculate a debtor’s disposable income under § 1325(b) in a way that satisfies the language of the Code, all the while steering clear of creating an unrealistic assessment (in either direction) of the debtor’s disposable income.
3. Parb-Time “Household” Members
The foregoing analysis does not end our inquiry, however, because the bankruptcy court opted to further refíne the economic unit approach to account for the part-time members of the Debtor’s “household.” The Debtor contends that even if the bankruptcy court did not err in using an economic unit analysis to determine her household size, it nonetheless erred in dividing individuals (the Debtor’s children and stepchildren) into “fractions and percentages” of her “household” when the Code “only speak[s] in terms of whole ‘person[s]’ and ‘individuals.’ ” She points to the majority of courts that have used the economic unit approach to contend that the bankruptcy court relied on the outlier case of Robinson to “earve[ ] children into fractions” and thus lead to “a contrived result.” (Br. for Appellant 23-25.)
We find no error in the bankruptcy court’s method of applying the economic unit approach in a manner that accounted for part-time members of the Debtor’s household. The cases apart from Robinson that have used the economic unit approach were asked to determine whether an individual who resided full-time with the debtor should be considered part of his or her “household.” E.g., Morrison, 443 B.R. at 388 (using the economic unit approach to determine that the boyfriend of a debtor who lived with that boyfriend full-time was a member of the debtor’s “household” under § 1325(b)); Jewell, 365 B.R. at 802 (using the economic unit approach to determine whether the debtors’ adult daughter and her children, and the debtors’ adult son, who resided full-time with the debtors were members of the debtors’ “household”).[14]
The situation in those cases is not what was presented in Robinson or here, where individuals do not live with the debtor on a full-time basis. See 449 B.R. at 482 (determining whether children who lived part-time with the debtor were part of his “household”). We recognize, as the bankruptcy courts in Robinson and this case have, that dividing individuals into fractional members of a household is less than ideal. At the same time, we recognize that the Debtor’s situation is increasingly common in modern American life, and that the number of individuals with a financial relationship to a debtor may well vary depending on the day of the week and other circumstances.[15]
*241 Contrary to the view expressed in the dissenting opinion, this result is consistent with the statutory language precisely because Congress did not define “household” or instruct bankruptcy courts how to make the determination as to a debtor’s “household” size. Despite this lack of clear guidance, the bankruptcy court carefully considered the specific financial circumstances of the parties involved, and ably recognized that the Debtor’s “household” size fluctuated from two to seven depending on what day or days were used to assess it. Requiring the bankruptcy court to pick between these extremes, which, although conveniently allowing for consideration of “whole” dependents, would also result in an inaccurate financial snapshot that has no basis in reality or the capacity of a debtor to pay creditors. The Code and the economic unit approach are flexible enough to permit the bankruptcy court’s conclusion that a composite number best reflected the debtor’s true “household” size. To be sure, the bankruptcy court’s task was made easier in this case given the parties’ stipulations as to the amount of time each child and step-child resided with the Debtor and the financial support the Debtor provides to them.[16] As the dissent points out, such mathematical precision may be more difficult in other cases. That it was possible here does not mean that every bankruptcy court must undertake the same level of precision in future cases. But it seems to us that the better model of § 1325(b)’s analysis is for the bankruptcy court to try to get to the bottom of the debtor’s true financial circumstances,'rather than merely to ballpark a figure based on the approximate number of “whole” dependents. Such a result would lead to similar under- and over-inclusive problems to those addressed above with respect to the heads-on-beds and income tax dependent methods, while simultaneously eliminating the flexibility and advantages of the economic unit approach. Section 1325(b), and the Code in general, is focused on assessing a debtor’s financial obligations and ability to pay creditors; in some cases, it may be necessary for the bankruptcy court — as the court did in this case — to recognize that a debtor has part-time members of the household who can neither be wholly excluded or wholly counted, but should be included for the fraction of time during which they are a part of the debt- or’s household expenses. Bankruptcy courts are capable of reviewing and mak *242 ing the requisite findings to permit such a determination of a debtor’s household size that reflects a just approximation of the debtor’s true financial situation.
This result is consistent with the Supreme Court’s recognition in Hamilton that bankruptcy courts possess flexibility to look beyond a mechanical application of § 1325(b)’s calculations in order to account for variations readily apparent in the record, even after the BAPCPA. See 130 S.Ct. at 2471-78; see also id. at 2478 (“[Wjhen a bankruptcy court calculates a debtor’s projected disposable income [under § 1325(b) ], the court may account for changes in the debtor’s income or expenses that are known or virtually certain at the time of confirmation.”). Consistent with that approach, we conclude that the bankruptcy court did not err in recognizing that the Debtor’s actual household size fluctuated based on the changing number of part-time members of her household. Nor did the bankruptcy court err in exercising its discretion to accommodate this reality in the debtor’s situation by representing the individuals as fractional full-time members of the household and then rounding to a whole number.[17]
III.
Congress did not make determining a debtor’s “household” size a straightforward component of his or her disposable income calculation. As discussed above, the Census Bureau’s “heads-on-beds” approach is too removed from the purpose of § 1325(b) to be an appropriate measure of a debtor’s “household” size. We further conclude that there are significant concerns with the income tax dependent method and the bankruptcy court here was correct not to rely on that approach in this case. Because Congress’ intent will most often be best implemented through a definition of “household” that is based on whether individuals operate as a single economic unit and are financially interdependent, we conclude the bankruptcy court did not err in applying this method to determine the Debtor’s “household” size. Accordingly, we affirm the order of the bankruptcy court.

AFFIRMED

. It is not apparent in the record before us who claims the Debtor’s children or stepchildren as dependents for federal income tax purposes.

. The bankruptcy court further noted that although the Debtor's stepdaughter was over the age of 19, it appeared from the stipulated facts that she was "financially dependent" on the Debtor. (J.A. 99 n. 5.)

. The Trustee is an intervenor in this appeal, on the side of the Creditor. For purposes of simplicity, we address their joint arguments as those of the Creditor.

. Specifically, a debtor's "household” size is relevant to determining how much the debtor can deduct for two portions of his “amounts reasonably necessary to be expended”: the amounts "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation ...” and, “if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.” § 1325(b)(2)(A)(i), (iii); § 1325(b)(3). "Dependent,” as used in this subsection is not defined.

. Although the Debtor discounts the significance of the § 1325(b) "household” size in her case, the calculation is an important preliminary step in assessing the “amounts reasonably necessary to be expended" for purposes of determining her projected disposable income. As discussed in greater detail below, the "amounts reasonably necessary to be expended” deduction from the Debtor’s monthly income includes an amount "for the maintenance or support of the debtor or a dependent of the debtor.” § 1325(b)(2)(A)(i). This amount, in turn is determined by the means test if the Debtor is an above-median income Debtor. § 1325(b)(3).
In deciding whether the Debtor is an above-median income debtor, she must identify whether her "current monthly income, when multiplied by 12, [is] greater than” "the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4.” In making this calculation, the Debtor must use either a household size of five or seven. Whether she uses five or seven will alter her final calculation by $1,250 per month, or a total of $15,000 for the twelvemonth period. While in either case, the result may be that she is an above-median income debtor, she still must go through the required calculations to reach the § 707(b) means test alternative method of calculating her "amounts reasonably necessary to be expended.” In turn, as discussed above, the Debtor’s "household” size under § 1325(b) will impact how she calculates her “amounts reasonably necessary to be expended” under the § 707(b) means test.

. Because it is beyond the scope of the bankruptcy court’s order, we do not address what "dependents” means for purposes of § 707(b)’s means test calculations.

. The Code defines "median family income” as "the median family income both calculated and reported by the Bureau of the Census.” 11 U.S.C. § 101(39A)(A).

. Most of the bankruptcy courts to address the issue have noted the lack of a definition of "household” in the Code, and have provided some explanation for why one or another approach is most consistent with congressional intent. As discussed infra pp. 234-36, the bankruptcy court in In re Ellringer, 370 B.R. 905 (Bankr.D.Minn.2007), concluded that the Census Bureau definition of "household” should be used because that is the definition used in the Census Bureau’s creation of the median family income statistics. Id. at 910-11. Other bankruptcy courts to apply this approach have noted that while the “economic unit” approach may have appealing aspects to it, nothing in the word “household” or the relevant statutory text suggests that the individuals in a household be financially interconnected. E.g., In re Epperson, 409 B.R. 503, 506-07 (Bankr.D.Ariz.2009) ("Congress does not require courts to take into account financial contribution of the household member, relationship to the debtor, and dependency when determining household size. Absent Congressional direction, it is inappropriate to consider a household member’s dependency on the [djebtor when determining household size; accordingly, household should be understood in the ordinary sense of the word.") (internal quotation marks and citation omitted).
The bankruptcy court in In re Law, 2008 Bankr.LEXIS 1198 (Bankr.D.Kan.2008), concluded that § 1325(b)’s cross-reference to § 707(b) — which only allows debtors to claim "dependents” and refers to the IRS tables— meant that the Code "consistently limits allowable expenses to those of the debtor, the debtor’s dependents, and the spouse of the debtor," and thus the term “household” should be restricted to those individuals a debtor can claim as dependents on his or her income tax filings. Id. at *19.
In contrast, the bankruptcy court in In re Jewell, 365 B.R. 796 (Bankr.S.D.Ohio 2007), was "unwilling to accept the broad definitions of [household] suggested by the Debtors of 'heads on beds’ ” because it believed that definition was "inconsistent with the methodology and purpose” of the test to ”calculate[e] a debtor’s 'disposable income.’ ” Id. at 800. It also noted that the income tax dependent method was too narrow "inasmuch as it fails to recognize those instances when a debtor may be actually providing support for a household member, but the circumstances do not fall neatly within the parameters envisioned by the [tax code].” Id. at 801. It also noted that even the IRS recognized "reasonable exceptions” to the principle that "the number of household members allowed should generally be the same as those claimed as dependents on the taxpayer’s tax returns.” Id. Consistently, the bankruptcy courts that have applied the "economic unit” approach over the other methods have pointed to its flexibility to the financial status of the debtor, and how its results provide the courts with the best tools to achieve the Code’s goal of providing a realistic assessment of the debt- or’s financial obligations. See In re Herbert, 405 B.R. 165, 169 (Bankr.W.D.N.C.2008); see also In re Robinson, 449 B.R. 473, 478-82 (Bankr.E.D.Va.2011) (same, and delineating *235 similar reasons for rejecting the other methods); In re Morrison, 443 B.R. 378, 384-87 (Bankr.M.D.N.C.2011) (same).

. As one bankruptcy court noted, if § 1325(b) was "so plain, so clear, so unambiguous that the [cjourt need look no further to determine its meaning ... then how could [so many] courts have interpreted it one way and [so many other] courts have interpreted it in exactly the opposite way? Doesn't the concept of 'plain' meaning carry with it the implication that the same meaning would be 'plain'— ordinary, literal and obvious — to every reader?” Morrison, 443 B.R. at 387 n. 6 (quotation marks and citation omitted).

. While the heads-on-beds approach runs a substantial risk of being over-inclusive for purposes of § 1325(b)’s calculations, we note that in certain cases it may also be under-inclusive. There may be situations in which a bankruptcy court determines it is appropriate to include within a debtor's “household” an individual who does not live with the debtor, but is part of the debtor’s reasonably necessary expenses, such as a dependent relative in a nursing home or assisted medical care facility-

. The IRS defines “dependent” as a qualifying child or relative and takes into consideration numerous factors, unrelated to any bankruptcy purpose, as set forth in 26 U.S.C. § 152 (defining "dependent” for federal income tax purposes).

. A debtor using the means test is permitted to deduct not only the "applicable monthly expense amounts specified” in the tables, but also “the debtor’s actual monthly expenses for the categories specified as Other Necessary Expenses [by the IRS] for the area in which the debtor resides....” § 707(b)(2)(A)(ii)(I). Thus, in requiring above-median income debtors to use the means test to assess their "amounts reasonably necessary to be expended,” the BAPCPA moved away from permitting such debtors to claim their actual expenses and toward requiring them to use a more standardized amount. See Ransom, 131 S.Ct. at 721-22; Baud v. Carroll, 634 F.3d 327, 333-34 (6th Cir.2011).

. As with the heads-on-beds approach, although the income tax dependent approach tends to skew one way, in some circumstances it may also create a false picture in the other direction. We can readily contemplate situations in which the income tax dependent method would be over-inclusive, such as where divorcing spouses agree who will claim a child for purposes of filing federal income taxes irrespective of the degree of financial support or where the child predominantly lives.

. In criticizing the bankruptcy court's application of the fractional economic unit approach, the dissent notes that the bankruptcy court in Jewell "did not treat [the debtors' son] as a fractional member of the household based on the ratio of his parents’ [limited financial support] to his total income.” Post, at 245. Jewell did not ever resolve the issue of whether the debtors' son should have been part of the debtors’ household because that was not the overarching issue in the case. 365 B.R. at 802 ("Even if this Court agreed ... that [the son] should be included as a member of the Debtors’ household....”). Moreover, each of the individuals at issue in Jewell resided with the debtors full-time, so the bankruptcy court was not faced with the circumstance presented here, where the Debt- or has individuals who reside regularly, but only part-time, with her and for whom she provides primary support only during the periods in which they reside with her.

. While both we and the bankruptcy court acknowledge this social shift as a factor in why it may be consistent with the intent of the Code to divide individuals into fractional members of a household, this recognition would not justify the approach used if it were inconsistent with the language Congress used. It is only because we conclude that the statutory text does not preclude this methodology that we recognize that it may be increasingly appropriate to use in light of the rising number of households with part-time residents.
Given the language Congress chose to use and has left undefined, it may be that Congress recognized the bankruptcy court would be in the best position to determine a debtor’s "household” size and that a practical, fact-based definition best served the Code’s purposes. In either event, Congress did not provide a clear definition such as it has to define terms in other contexts, so we are tasked with assessing whether the bankruptcy court’s interpretation is an unreasonable interpretation of the language Congress did use. We conclude it is not.

. The dissent may well be correct that the time spent in a debtor’s "household” is not always true reflection of how much financial support a debtor provides. But this is not the case here, and that concern is something bankruptcy courts and the parties can argue in an appropriate case in which the economic unit method is applied. Because of the parties' stipulations in this case, however, the bankruptcy court appropriately determined that the one reflected the other.

. The bankruptcy court did not explain its decision to round from the fraction of 2.59, which resulted from the calculations of how much time each child and step-child lives with the Debtor, to the round number of three "children” for purposes of § 1325(b). The Debtor does not specifically raise any challenge to this specific component of the bankruptcy court's decision.. We find nothing about doing so that conflicts with the Code’s provisions and thus do not find that the court abused its discretion in deciding to round off to the nearest whole individual for the purpose of determining a household size that could be cross-referenced to the median family income tables.